Gertrude CONNELLY, et al., Appellants,

v.

IOLAB CORPORATION,
et al., Respondents.

No. 78177.

Supreme Court of Missouri,
En Banc.

Aug. 20, 1996.

Rehearing Denied Sept. 17, 1996.

Godfrey P. Padberg, W. T. Nolan, Richard A. Galosy, Christine A. Gilsinan, St. Louis, for Appellants.

Andrew See, Scott W. Sayler, Kansas City, Adele Baker, Terrence M. R. Zic, Washington, DC, for Respondents.

Bruce N. Kuhlik, Jennifer A. Johnson, Washington, DC, John M. Duggan, Kansas City, Amicus Health Industry Manufacturers Association.

HOLSTEIN, Chief Justice.

The question presented in this appeal is the extent to which the Medical Devices Amendment (MDA) of 1976, 21 U.S.C. § 360c, et seq., of the Food, Drug and Cosmetic Act, 21 U.S.C. § 301, et seq., preempts plaintiffs' common law actions against the manufacturer of an artificial intraocular lens.

The trial court granted summary judgment, holding that common law actions against the manufacturer for negligence, strict liability, failure to warn, failure to obtain informed consent, and fraud were preempted by the MDA. Following an opinion by the Missouri Court of Appeals, Western District, this Court granted transfer. Reversed and remanded.

## I.

■ Iolab manufactured the 91Z intraocular lens. Physicians implanted these lenses into the plaintiffs' eyes to replace damaged natural lenses. Plaintiffs' petition asserts that the implanted lenses were defective and unreasonably dangerous. They also claim the 91Z lenses had an unacceptably high complication rate and that fact was concealed from the plaintiffs and plaintiffs' treating physicians and hospitals. Pursuant to a motion for summary judgment, the trial court concluded that all plaintiffs' causes of action asserted in the pleadings were preempted by the MDA. In reviewing the ruling on the facts, all reasonable inferences are drawn in favor of the plaintiffs. *ITT Commercial Fin. v. Mid–America Marine*, 854 S.W.2d 371, 376 (Mo. banc 1993).

■ The 1976 MDA was prompted by the Food and Drug Administration's (FDA) inability to review a medical device for safety and effectiveness prior to being marketed and by an emerging scandal involving the safety of A.H. Robbins company's Dalkon Shield. Robert S. Adler and Richard A. Mann, *59 Mo.L.R. 895, 910–11* (Fall 1994). No uniform national policy was in place to promote development of new, safe medical devices. Congress enacted the MDA, in the words of the statute's preamble, "to provide for the safety and effectiveness of medical devices intended for human use." *90 Stat. 539* (1976).

■ The MDA classifies medical devices intended for human use into one of three categories based on the degree of potential risk to public health and safety. Class I devices, such as a tongue depressor, are those that do not present a potential unreasonable risk of injury or illness. *21 U.S.C. § 360c(a)(1)(A)*. Class II devices are more complex, such as tampons and oxygen masks, and are subject to a higher degree of regulation. *21 U.S.C. § 360c(a)(1)(B)*. Class III devices are those that present a potential unreasonable risk of illness or injury and require pre-market approval (PMA) by the FDA to determine whether the product provides reasonable assurance of its safety and effectiveness. *21 U.S.C. § 360c(a)(1)(C)*. Class III devices include artificial intraocular lens implants.

The PMA application process is quite rigorous. Because of the need for special treatment of certain types of investigational devices which, by their nature, cannot meet the requirements applicable to marketed devices, Congress has provided a means to exempt such devices from the PMA process. *Gile v. Optical Radiation Corp.*, 22 F.3d 540–42 (3d. Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 429, 130 L.Ed.2d 342 (1994). In order to obtain an investigational device exemption (IDE), a manufacturer must apply to the FDA for permission to undertake clinical investigations. *21 U.S.C. § 360j(g)(2)(A)*.

The IDE for intraocular lenses is provided for by federal regulations. The regulations establish standards for manufacturing intraocular lenses and provide details for monitoring studies. The regulations mandate strict reporting and recordkeeping requirements, including evaluation of complaints about the lenses. *21 C.F.R. § 813.46*.

In 1980, the FDA specifically granted approval of a plan for the clinical investigation of the 91 Z intraocular lens. When it was introduced in 1981, it was an experimental lens classified by federal regulations as an investigational device subject to premarket approval by the FDA pending an appropriately controlled clinical investigation to determine if the lens was safe and effective. It was during that investigational period that the lenses were implanted in plaintiffs' eyes and that they claim to have since suffered injury.

Clearly, plaintiffs have asserted common law causes of action under Missouri law. The only question presented here is one of law. That is, whether the actions pleaded are preempted by the federal statutes.

## II.

The MDA has special provisions limiting entities other than the FDA from imposing requirements on the makers of medical devices and the processes by which those devices are developed, investigated and manufactured. *21 U.S.C. § 360k(a)* provides:

[N]o State or political subdivision of the State may establish or continue in effect with respect to a device intended for human use any requirement:

(1) which is different from, or in addition to, any requirement applicable under this chapter to the device, and

(2) which related to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter.

### A.

■ The question of federal preemption descends from a construction of both the Constitution and federal statutes involved. The doctrine of federal preemption is derived from the Supremacy Clause, article VI, cl.2 of the United States Constitution. Since *McCulloch v. Maryland,* 17 U.S. (4 Wheat.) 316, 4 L.Ed. 579 (1819), it has been settled that a state law that conflicts with federal law is "without effect." *Maryland v. Louisiana,* 451 U.S. 725, 746, 101 S.Ct. 2114, 2129, 68 L.Ed.2d 576 (1981). It is assumed that the historic police powers of the state are not preempted absent "the clear and manifest purpose of Congress" to do so. *Rice v. Santa Fe Elevator,* 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947). The Supreme Court has stated that it is reluctant to interpret a federal statute in such a way as to find preemption of subjects traditionally governed by state law. *CSX v. Easterwood,* 507 U.S. 658, 662–64, 113 S.Ct.

1732, 1737, 123 L.Ed.2d 387 (1993). In determining if a federal statute preempts a state cause of action, the purpose of Congress in enacting the federal statute is the ultimate touchstone. *Malone v. White Motor Corp.,* 435 U.S. 497, 504, 98 S.Ct. 1185, 1189–90, 55 L.Ed.2d 443 (1978).

■ The congressional purpose to preempt a state remedy may be determined in either of two ways. The first is where preemption is found in the express language of the statute. *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 516, 112 S.Ct. 2608, 2617, 120 L.Ed.2d 407 (1992). The second is to find preemption implied from the structure and purpose of the statute. Implied preemption occurs when state law actually conflicts with federal law or when the federal law so thoroughly occupies the legislative field that it may be reasonably inferred that Congress left no room for the state to supplement it. *Id.* Where a statute, such as the one at hand, has a provision explicitly addressing preemption, that provision provides a "reliable indicium of congressional intent with respect to state authority." *Id.* at 517, 112 S.Ct. at 2618. When a federal statute expressly preempts some, but not all, state law, state courts need only apply preemption to those state laws which have a direct and substantial effect on the federal law. *See English v. General Electric Co.,* 496 U.S. 72, 84, 110 S.Ct. 2270, 2278, 110 L.Ed.2d 65 (1990); *Cipollone,* 505 U.S. at 522–23, 112 S.Ct. at 2620–21.

*In Cipollone,* the United States Supreme Court discussed the issue of preemption in the context of the Public Health Cigarette Smoking Act of 1969. The preemption statute at issue in that case provided that "[n]o requirement or prohibition based on smoking and health shall be imposed under State law with respect to advertising or promotion of any cigarettes...." *Cipollone,* 505 U.S. at 515, 112 S.Ct. at 2617. The Supreme Court found that the terms "requirement" and "prohibition" encompass state common law actions. "The phrase '[n]o requirement or prohibition' sweeps broadly and suggests no

distinction between positive enactments and common law." *Id.* at 521, 112 S.Ct. at 2620.

Prior to June 1996, every federal appellate court except one followed the *Cipollone* definition of "requirements," finding that § 360k of the MDA preempted most common law actions. *Michael v. Shiley, Inc.,* 46 F.3d 1316, 1323 (3rd Cir.1995); *Martello v. Ciba Vision Corp.,* 42 F.3d 1167, 1168 (8th Cir. 1994); *Nat'l Bank of Commerce of El Dorado v. Kimberly–Clark Corp.,* 38 F.3d 988, 990–91 (8th Cir.1994); *Gile v. Optical Radiation Corp.,* 22 F.3d 540, 542–43 (3rd Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 429, 130 L.Ed.2d 342 (1994); *Rogers v. Optical Radiation Corp.,* 12 F.3d 194, 195 (11th Cir.1994); *Duncan v. Iolab,* 12 F.3d 194, 195 (11th Cir.1994); *Stamps v. Collagen Corp.,* 984 F.2d 1416, 1420–21 (5th Cir.1993); *Talbott v. C.R. Bard, Inc.,* 865 F.Supp. 37, 49–50 (D.Mass.1994); *Slater v. Optical Radiation Corp.,* 756 F.Supp. 370, 373 (N.D.111.), *aff'd* 961 F.2d 1330 (7th Cir.1991); *Covey v. Surgidev,* 815 F.Supp. 1089, 1094 (N.D.Ohio 1993); *Hunsaker v. Surgidev,* 818 F.Supp. 744, 748–49 (M.D.Pa.1992), *aff'd* 5 F.3d 1489 (3rd Cir. 1993). Only a single federal appellate court has reached the conclusion that the MDA did not preempt any state common law causes of action. *Kennedy v. Collagen Corp.,* 67 F.3d 1453 (9th Cir.1995). That court's analysis rejected the conclusion of *Cipollone* that the word "requirement" was sufficiently clear to include common law causes of action and relied on the FDA regulations to support its interpretation of the word "requirement."

### B.

In a recent hand down, the United States Supreme Court considered whether the § 360k preemption applied to a claim for defective design of a hearing aid, a class III device, which was exempt from the rigorous PMA process under § 510(k) because the device was marketed prior to the effective date of the act. A divided court concluded that § 360k of the MDA does not preempt state common law tort claims unless the FDA specifically preempts them by regulation or unless the tort claim is based upon a positive enactment of state law that is device specific and different from or in addition to federal requirements, or if the tort claim has the specific effect of establishing a substantive requirement for a specific device. *Lohr v. Medtronic Inc.,* —— U.S. ——, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996) (opinion by Stevens, J., joined by Kennedy, Souter and Ginsberg, JJ.; Breyer, J., concurring in part and concurring in the judgment; O'Connor, J., concurring in part and dissenting in part, joined by the Chief Justice, Scalia, and Thomas, JJ.). In light of the *Lohr* decision, this Court finds that none of plaintiffs' tort actions are preempted, and summary judgment was inappropriate.

In order to determine whether plaintiffs' common law actions are preempted, both the plurality analysis by Justice Stevens and Justice Breyer's concurring opinion are relevant. The plurality opinion suggests that the term "requirements" has a narrower meaning in § 360k than in the statute at issue in *Cipollone.* The plurality indicates that the § 360k exemption is limited to "device-specific enactments of positive law by legislative or administrative bodies, not the application of general rules of common law by judges and juries." —— U.S. at ——, 116 S.Ct. at 2252. The plurality also states, "The presence of a damage remedy does not amount to the additional or different 'requirement' that is necessary under the statute; rather, it merely provides another reason for manufacturers to comply with identical existing 'requirements' under federal law." —— U.S. at ——, 116 S.Ct. at 2255. The plurality opinion notes that "[n]othing in § 360k denied [a state] the right to provide a traditional damages remedy for violations of common law duties where those duties parallel federal requirements." *Id.* The plurality stops short, however, of declaring that common law duties are never "requirements" within the meaning of § 360k, finding it unnecessary to address the issue. However, the plurality did suggest that because few common law requirements are device specific, "[i]t will be rare indeed for a court hearing a

common law action to issue a decree that has 'the effect of establishing a substantive requirement for a specific device.' " *Id.* at ——, 116 S.Ct. at 2259, quoting *21 C.F.R. § 808.1(d)(6)(ii)(1995)*.

Justice Breyer's concurring opinion disagrees with the plurality on two grounds. First, he believes that some common law actions are preempted by § 360k. Second, he disagrees with the plurality dicta that preemption of common law claims would be "few" or "rare." *Id.* at ——, 116 S.Ct. at 2262. He would hold that § 360k preempts not only state common law actions flowing from positive enactments of state law that are more onerous than federal requirements but, in addition, preemption applies when FDA regulations are in conflict with the liability creating premises of a common law action. In reaching his conclusion, he relies not only on § 360k of the statute, but on the regulations:

> State requirements are preempted only when. . . . there are . . . specific [federal] requirements applicable to a particular device. . . . thereby making any *divergent* State . . . requirements applicable to the device different from, or in addition to, the specific [federal] requirements.

—— U.S. at ——, 116 S.Ct. at 2260–61, citing *21 CFR 808.1(d)*(emphasis added by Breyer, J.). Justice Breyer would find preemption under § 360k: (1) where compliance with both the state common law standard and the federal regulation is impossible, referred to as "conflict" preemption, or (2) where the federal regulatory scheme is "so pervasive" as to infer that Congress left no room for supplementation by the states, referred to as "field" preemption. *Id.* at ——, 116 S.Ct. at 2261–62. Reading § 360k of the statute together with § 808.1(d) of the regulations, Justice Breyer found neither conflict nor field preemption.[1]

### III.

Under the plurality opinion, there are no positive enactments of state statutes or regulations at issue here and thus no preemption. Under Justice Breyer's analysis, the MDA and its regulations are not so pervasive as to preempt the field of state common law actions. However, to complete Justice Breyer's analysis, one must determine whether any of the "liability creating premises" of plaintiffs' state law tort claims conflict with any federal requirements. If any basis of common law liability asserted by plaintiffs conflicts with a federal regulation in such a way as to make performance of both impossible, the state common law claim is preempted. We find no such conflict in any of the actions for defective design, failure to warn, ineffective consent or fraud claims.

### A.

▮ The first and second claims in the plaintiffs' petition allege negligence and strict liability based upon defective and unreasonably dangerous design and manufacture of the 91Z lens. Plaintiffs claim that the physical and chemical makeup of the lenses caused them injury. The MDA and FDA regulations clearly and extensively regulate the design, manufacture, sale and marketing of Class III medical devices. The premarketing process requires detailed descriptions of the ingredients, components, methods, controls, and facilities used in the manufacture and processing of a Class III device. *See 21 U.S.C. § 360e.* The manufacturing requirements of § 360j(f) impose further requirements upon the manufacturers of Class III devices. Additionally, the FDA has specific implementing regulations governing the investigational exemptions for intraocular lenses. These regulations control the manufacturing, processing and implementation methods of intraocular lenses. *See 21 C.F.R. § 813.1, et seq.*

---

1. Justice O'Connor, while disagreeing with the analysis of the plurality and parts of Justice Breyer's analysis, concurred in finding that the common law defective design claims were not preempted. —— U.S. at ——, 116 S.Ct. at 2262–64. However, she found the federal regulations relating to manufacturing and labeling so comprehensive and extensive as to preempt any common law claim based on negligent manufacturing or labeling. *Id.* at —— ——, 116 S.Ct. at 2262–64.

Under Justice Breyer's analysis, unless the elements of the common law action establish divergent state requirements from a federal regulation, the common law action is not preempted. If a specific premise of plaintiffs' claim of negligent design or manufacture would require defendant to violate a regulation to avoid state common law liability, there would be a conflict and the action would be preempted. For example, if the plaintiff's claim is premised on expert testimony that it is negligent to design or manufacture a lens made of a particular polymer but the regulations require that such polymer be used, there would be a conflict and preemption of the claim. While preemption is possible, no specific premise of plaintiffs' claim for negligent design and manufacture is cited or found that would require violation of a federal regulation on the subject. Under Justice Breyer's analysis, until a conflict exists, no preemption occurs under the MDA.

### B.

■■■ Plaintiffs allege that Iolab failed to warn them of the 91Z lens' unreasonably high complication rates. The MDA establishes a notification and recall requirement for medical devices determined to be unsafe. Section 360h requires the manufacturer to report to the FDA any problem with a device that causes serious harm or death. The FDA must then notify all health care professionals who prescribe or use the device if the device is determined to present an unreasonable risk of substantial harm to the public. *21 U.S. C § 360h(a).* An exemption for an investigational lens may also be withdrawn by the FDA if there is reason to believe that the lens may be unsafe. *See 21 C.F.R. § 813.35(a).* Again, unless the common law premises of liability conflict with some federal regulation making performance of both impossible, there is no preemption under Justice Breyer's analysis. None of the applicable regulations prohibit Iolab from notifying physicians or customers of complication rates.

To the extent this claim is based on Iolab's failure to place a warning on the packaging and labeling of the intraocular lens, the state claim is also not in conflict with federal regulations. The PMA process requires the manufacturer to provide a sampling of labeling proposed for the device. *21 U.S.C. § 360e(0)(3)(B)(vi).* Likewise, in its intraocular lens regulation, the FDA sets out labeling requirements specifically for intraocular lenses. *21 C.F.R. § 813.5(a) and (b).* Nothing in those regulations prohibits Iolab from adding a warning to the label regarding unreasonably high complication rates. Again, where the premises of state common law claims are not in conflict with the federal regulations, there is no preemption of that claim under Justice Breyer's analysis.

### C.

Plaintiffs' next common law claim is that the informed consent forms were not legally effective because Iolab knew of an unacceptably high rate of medical complication and unacceptably low visual results of the 91Z lens and negligently failed to disclose the information to them. Plaintiffs claim that the informed consent was invalidated because of undisclosed high rates of complication.

■■■ The MDA provides that for an investigational device exemption to be issued, the applicant must assure that informed consent will be obtained from each human subject. *21 U.S.C. § 360j(g)(3)(D).* The elements of informed consent are laid out in the federal regulations, *21 C.F.R. § 50.25,* and incorporated by reference into the IDA requirements for intraocular lenses. *21 C.F.R. § 813.66(a)(6).* The regulations neither prohibit nor require disclosure of the rates of complication in the consent form. The regulations and the common law action do not establish conflicting requirements.

Moreover, 21 C.F.R. § 50.20 provides, "[No] informed consent, whether oral or written, may include any exculpatory language through which the subject or the representative is made to waive or appear to waive any of the subject's legal rights, or releases or appears to release the investigator, the sponsor, the institution, or its agents

from liability for negligence." The regulations further provide, "The informed consent requirements in these regulations are not intended to preempt any applicable Federal, State, or local laws which would require additional information to be disclosed for informed consent to be legally effective." *21 C.F.R. § 50.25(c)*. These regulations support the conclusion that there is no preemption of any common law action regarding informed consent.

## D.

 The plaintiffs' petition raises two distinct claims for fraud and misrepresentation. The first is that Iolab fraudulently concealed information that the 91 Z lenses were predisposed to cause injury. The second is that Iolab misrepresented the nature and extent of the defect in the lens through information provided to the plaintiffs' treating physicians. The regulations have specific provisions regarding requirements of notice of defects and detailed requirements of reporting to the FDA of such defects by the manufacturer. *21 C.F.R. § 813.46*.

Again applying Justice Breyer's analysis, do plaintiffs' common law fraud actions conflict with the specific federal requirements applicable to investigational medical devices so as to trigger preemption? Labeling and other representations regarding the safety and effectiveness of investigational devices are specifically covered by the regulations. For example, 21 C.F.R. § 812.5 governs the contents of investigational device labels, and § 812.25(f) requires submission of an investigational device label to the FDA for approval. The regulations provide that in the promotion of investigational devices, a manufacturer may not "represent that an investigational device is safe and effective for the purposes for which it is being investigated." 21 *C.F.R. § 812.7(d)*. If the FDA finds that the manufacturer of an investigational device has failed to comply with its regulations, including § 812.7(d), the FDA may withdraw its approval of the IDE. *21 C.F.R. § 812.30(b)*. None of the regulations permit or require fraudulent statements, and none prohibit truthful disclosure of information. The state common law fraud claims are not in conflict with specific federal regulatory requirements.

## CONCLUSION

Under both the plurality opinion of Justice Stevens and the concurring opinion of Justice Breyer, none of plaintiffs' claims are preempted. It is therefore ordered that the judgment be reversed and the case remanded for further proceedings consistent with this opinion.

BENTON, PRICE, LIMBAUGH, COVINGTON and WHITE, JJ., and CONNETT, Senior Judge, concur.

ROBERTSON, J., not sitting.