**Sammi Jo STEGALL, Plaintiff–Appellant,**

v.

**PEOPLES BANK OF CUBA, Defendant–Respondent.**

No. SD 29046.

Missouri Court of Appeals,
Southern District,
Division Two.

Dec. 4, 2008.

David M. Duree, St. Louis, MO, for appellant.

Jeffrey S. Heuer, St. Louis, MO, for respondent.

DON E. BURRELL, Presiding Judge.

Sammi Jo Stegall ("Plaintiff") filed a petition for breach of contract against Peoples Bank of Cuba ("Bank"), claiming she was damaged when Bank debited her checking account in response to several electronic funds requests she had not authorized. Bank filed a motion to dismiss Plaintiff's petition for failure to state a claim upon which relief could be granted, alleging Plaintiff's action was time-barred by the one-year limitation of actions period in the Electronic Fund Transfers Act ("EFTA"), 15 U.S.C.A. Sections 1693–1693r (1998).[1] The trial court agreed with Bank and entered a judgment dismissing the case. At issue is whether Plaintiff's common law contract action (with its longer statute of limitation) has been preempted by the EFTA. Because the EFTA specifically allows state law to control whenever its provisions are more favorable to consumers than those contained within the EFTA, we reverse the dismissal and remand the case for further proceedings.

## I. Facts and Procedural Background

In reviewing the dismissal of a petition for failure to state a claim, the facts in the petition are treated as true and all reasonable inferences are construed in the plaintiff's favor. *Connelly v. Iolab Corp.*, 927 S.W.2d 848, 850 (Mo. banc 1996); *Moynihan v. Gunn*, 204 S.W.3d 230, 233 (Mo. App. E.D.2006). Viewed in that light, relevant facts and favorable inferences therefrom are as follows.

Between September 10, 2002, and July of 2004, Bank disbursed approximately $38,000 from Plaintiff's checking account in

response to electronic funds transfer requests she had not authorized. Plaintiff complained of these unauthorized transfers to Bank in December of 2002, and continued to do so until she closed her account in July of 2004. On August 24, 2007, Plaintiff filed her Petition against Bank, claiming Bank had breached an implied term of their banking contract that Bank would charge her account "only on [Plaintiff's] authentic order." Plaintiff's petition did not claim any rights under the EFTA or make any reference to it. Bank's motion to dismiss argued that the matter was exclusively governed by the EFTA and that Plaintiff could not avoid its one-year limitation of actions period by couching her claim as an action on a contract. The trial court granted Bank's motion and entered a Judgment and Order of Dismissal from which Plaintiff now appeals.

## II. Standard of Review

In reviewing a trial court's dismissal of a petition for failure to state a claim upon which relief can be granted, "the sole issue to be decided is whether, after allowing the pleading its broadest intendment, treating all facts alleged as true and construing all allegations favorably to plaintiffs, the averments invoke principles of substantive law entitling plaintiffs to relief." *Lowrey v. Horvath*, 689 S.W.2d 625, 626 (Mo. banc 1985) (citing *Shapiro v. Columbia Union Nat'l Bank & Trust Co.*, 576 S.W.2d 310, 312 (Mo. banc 1978)). We review *de novo* whether the petition at issue invoked such principles. *Hess v. Chase Manhattan Bank*, 220 S.W.3d 758, 768 (Mo. banc 2007); *Moynihan*, 204 S.W.3d at 232–33. As the trial court did not state a basis for its dismissal, we presume it was based on at least one of the grounds stated in Bank's motion to dismiss. *See Moynihan*, 204 S.W.3d at

1. All references to the EFTA are to 15 U.S.C.A. sections 1693–1693(r) (West 1998).

233. Here, Bank's only argument was that Plaintiff's claim was time-barred by the EFTA's one-year limitation of actions period.

### III. Analysis

Congress enacted the EFTA "to provide a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund transfer systems. The primary objective of [the EFTA], however, is the provision of individual consumer rights." Section 1693(b). Under the EFTA, any action may be brought "within one year from the date of the occurrence of the violation." Section 1693m(g). While the EFTA specifically applies to unauthorized electronic fund transfers—and therefore to the specific type of transfer at issue in Plaintiff's claim (*see* Section 1693f(f)(1))—we must determine whether Congress intended the EFTA to provide the *exclusive* remedy for this type of unauthorized transfer and thereby preempt any other grounds for relief that would otherwise be available under state law.

■ Statutory interpretation is purely a question of law and is reviewed *de novo*. *Cline v. Teasdale*, 142 S.W.3d 215, 222 (Mo.App. W.D.2004). When interpreting a statute, we are to determine the intent of its drafters by giving the language used its plain and ordinary meaning. *Id.* If the intent of the legislative body is clear and unambiguous, we are bound by that intent. *Id.* "In determining if a federal statute preempts a state cause of action, the purpose of Congress in enacting the federal statute is the ultimate touchstone." *Connelly*, 927 S.W.2d at 851.

■ A federal statute may expressly preempt a state remedy or may do so by implication. *Id.* Express preemption occurs when the exemption is expressly stated within the statute itself. *Id.* Implied

preemption occurs when state law conflicts with federal law or when the federal law "so thoroughly occupies the legislative field that it may be reasonably inferred that Congress left no room for the state to supplement it." *Id.* If a statute explicitly addresses preemption, the provision provides a "reliable indicium of congressional intent with respect to state authority." *Id.* (quoting *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 517, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992)). "When a federal statute expressly preempts some, but not all, state law, state courts need only apply preemption to those state laws which have a direct and a substantial effect on the federal law." *Id.; see English v. Gen. Elec. Co.*, 496 U.S. 72, 84, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990); *Cipollone*, 505 U.S. at 522–23, 112 S.Ct. 2608.

The EFTA expressly addresses its effect on state law. Section 1693q states, in relevant part:

> [The EFTA] does not annul, alter, or affect the laws of any State relating to electronic fund transfers, except to the extent that those laws are inconsistent with the provisions of [the EFTA] and then only to the extent of the inconsistency. A State law is not inconsistent with [the EFTA] if the protection such law affords any consumer is greater than the protection afforded by [the EFTA].

Section 1693q.

■ The clear language of the EFTA indicates that Congress did not intend it to exclusively occupy the legislative field dealing with electronic fund transfers but to apply a minimum baseline of protection for consumers. As noted above, section 1693q of the EFTA expressly contemplates the application of state law as not inconsistent with the provisions of the EFTA "if the protection such law affords

any consumer is greater than the protection afforded by [the EFTA]." Section 1693q. Thus, we must determine whether Plaintiff's state law-based contract claim provides her (a consumer) with greater protection than that afforded by the EFTA.[2]

Plaintiff relies on *Gaffney v. Cmty. Fed. Sav. & Loan Ass'n,* 706 S.W.2d 530 (Mo. App. E.D.1986), for her claim that the common law of Missouri provides greater rights to consumers than the EFTA and thus is not preempted by it.[3] In *Gaffney,* the plaintiffs brought a conversion claim against their bank after several unauthorized ATM withdrawals were made from their account. *Id.* at 532–33. The *Gaffney* court determined that conversion was not the appropriate legal theory to use when seeking to recover improperly disbursed cash—money being a completely fungible item—but held that the plaintiffs had adduced sufficient evidence at trial to state a claim for breach of contract founded on the rule of law that "the bank's contractual duty to charge a depositor's account *only* on the depositor's authentic order is absolute." *Id.* at 533–34; *see also Polzin v. Bank of Holden,* 153 S.W.3d 353, 358 (Mo. App. W.D.2005) (citing *Gaffney* 706 S.W.2d

at 534 for the proposition that "[a]s a general rule, a bank is required to honor the order of a depositor."). The *Gaffney* court then stated: "The evidence indicates there was an unauthorized withdrawal from plaintiff's account, and a subsequent failure by defendant to re-credit plaintiff's account. Plaintiffs have grounds for relief based on these theories." *Id.* at 533. Finally, the *Gaffney* court stated the EFTA was "not controlling in this case as plaintiffs did not bring this action under the statute." *Id.*

Relying on *Gaffney,* Plaintiff claims that, under the common law of Missouri, a bank has a contractual duty to charge a depositor's account only on the depositor's authentic order. As such, she argues that her claim is timely brought under either the five-year limitation period in section 516.120[4] ("Within five years: (1) All actions upon contracts, obligations or liabilities, express or implied, except those mentioned in section 516.110 . . . .") or the ten-year limitation period in section 516.110 ("Within ten years: (1) An action upon any writing, whether sealed or unsealed, for the payment of money or property;"). Because she filed her petition in this case

---

2. Plaintiff relies on *Exxon Shipping Co. v. Baker,* —— U.S. ——, 128 S.Ct. 2605, 171 L.Ed.2d 570 (2008), to argue that because the EFTA does not speak directly to Missouri common law on the contractual relationship between a bank and its depositors her claims are not preempted. Plaintiff's reliance on *Exxon* is misplaced. The *Exxon* Court did not hold that common law cannot be preempted unless the federal statute directly addresses the common law at issue; a congressional intent analysis must still be undertaken. *Id.* at 2618–19; *U.S. v. Texas,* 507 U.S. 529, 534, 113 S.Ct. 1631, 123 L.Ed.2d 245 (1993) ("Congress need not 'affirmatively proscribe' the common-law doctrine at issue."). In any event, the EFTA does "speak directly" to the contractual relationship between a bank and its depositors with respect to electronic fund transfers.

3. Bank cites *Hospicomm, Inc. v. Fleet Bank, N.A.,* 338 F.Supp.2d 578 (E.D.Pa.2004), for the proposition "that in Pennsylvania, a cause of action for unauthorized electronic withdrawals must be brought under the EFTA." *Hospicomm* actually dealt with whether Article 4 of the UCC (state law) covered unauthorized use of an ATM card; not whether Pennsylvania state law was preempted by the EFTA. The *Hospicomm* court concluded "that in Pennsylvania, a cause of action for an unauthorized use of an ATM card should be brought under the EFTA, rather than Article 4 of the UCC." *Id.* at 587.

4. All references to Missouri statutes are to RSMo (2000) unless otherwise indicated.

more than one year after the unauthorized disbursements were made, Plaintiff argues that her contract action will provide her with greater protection than her now time-barred rights under the EFTA. Because the *Gaffney* court was not directly faced with a claim that Missouri's common law governing unauthorized transfers from depositors' bank accounts has been preempted by the EFTA, we must now make that determination.

### A. Greater Protection?

■ Bank argues that the longer state statutes of limitation governing breach of contract actions do not provide consumers with greater protection than the EFTA because statutes of limitation are mere procedural elements. While Bank is correct that Missouri considers statutes of limitation as procedural only, and not as substantive law, *Hemar Ins. Corp. v. Ryerson*, 108 S.W.3d 90, 95 (Mo.App. E.D. 2003), statutes of limitation serve merely to bar a remedy; they do not extinguish the underlying right. *Thompson v. Brown & Williamson Tobacco Corp.*, 207 S.W.3d 76, 114 (Mo.App. W.D.2006) (citing *Maddox v. Truman Med. Ctr., Inc.*, 727 S.W.2d 152, 155 (Mo.App. W.D.1987)) (holding that the failure of one spouse to sue for injuries within the statute of limitation period applicable to that cause of action does not bar a suit for loss of consortium based on the same conduct when that particular claim enjoyed a longer limitation of actions period).

■ The applicable language of the EFTA does not distinguish between procedural and substantive law. It states that "[a] State law is not inconsistent ... if the protection such law affords any consumer is *greater* than the protection afforded by the [EFTA]." Section 1693q (emphasis added). Under the facts alleged in Plaintiff's petition, her state law-based contract claim provides her with greater rights than the EFTA because her petition would be considered timely filed under its provisions as opposed to completely barred by the EFTA's one-year limitation of actions period. Giving the words contained in section 1693q of the EFTA their plain and ordinary meaning, Plaintiff's common law contract claim is not inconsistent with the EFTA.

This conclusion is also consistent with the overarching policy rationale announced by section 205.1 of Regulation E, 12 C.F.R. Sections 205.1–.18,[5] which states that "[t]he primary objective of the [EFTA] and this part is the protection of individual consumers engaging in electronic fund transfers." 12 C.F.R. Section 205.1. Section 205.12 goes on to set forth four standards for determining whether state law is inconsistent with the requirements of the EFTA and Regulation E. Under those standards, State law is inconsistent if it:

(i) Requires or permits a practice or act prohibited by the federal law;

(ii) Provides for consumer liability for unauthorized electronic fund transfers that exceeds the limits imposed by the federal law;

(iii) Allows longer time periods than the federal law for investigating and correcting alleged errors, or does not require the financial institution to credit the consumer's account during an error investigation in accordance

**5.** "The regulation in this part, known as Regulation E, is issued by the Board of Governors of the Federal Reserve System pursuant to the [EFTA]. This part carries out the purposes of the [EFTA]...." 12 C.F.R. 205.1 (2008).

All references to the Code of Federal Regulations are to 12 C.F.R. of Regulation E, sections 205.1–205.12 (2008).

with [the Regulation E procedures for resolving errors]; or

(iv) Requires initial disclosures, periodic statements, or receipts that are different in content from those required by the federal law except to the extent that the disclosures relate to consumer rights granted by the state law and not by the federal law.

12 C.F.R. Section 205.12(b)(2).

▮▮▮▮▮▮ Looking at these standards and the purpose of Regulation E—"[t]he primary objective . . . is the protection of individual consumers"—it becomes apparent that the purpose of the EFTA's reference to state law is to maximize the protection of consumers by allowing them to utilize whichever provisions of state or federal law provide them with the greater advantage. *See* 12 C.F.R. Section 205.1. If State law provides consumers with more protection, it is not preempted. *See* 12 C.F.R. Sections 205.1, 205.12. "It is a plaintiff's prerogative to choose the theory upon which he will submit his case, so long as that theory is supported by the pleadings and the evidence." *Elmore v. Owens–Illinois, Inc.*, 673 S.W.2d 434, 437 (Mo. banc 1984). Allowing Plaintiff to bring her common law breach of contract claim is not inconsistent with the four standards set forth in Regulation E and, under the facts of this particular case, provides her (a consumer) with greater protection than that offered by the EFTA.

Bank argues that even if Missouri contract law offers consumers protection substantially similar to that provided by the EFTA, Plaintiff would be required to show that Missouri had received an exemption from the Federal Reserve Board before it would be saved from EFTA preemption in the area of electronic fund transfers. Section 1693r states:

The Board shall by regulation exempt from the requirements of [the EFTA] any class of electronic fund transfers within any State if the Board determines that under the law of that State that class of electronic fund transfers is subject to requirements substantially similar to those imposed by [the EFTA] and that there is adequate provision for enforcement.

15 U.S.C. Section 1693r. Bank's argument implies that the State of Missouri had an affirmative duty to seek a Board determination regarding whether its state common law was preempted by the EFTA. While interested parties—like Bank—may seek such a determination by following the procedures under Regulation E, *see* Electronic Fund Transfers; Final Rule and Update to Official Staff Commentary, 49 Fed.Reg. 40799 (Oct. 18, 1984) (to be codified at 12 C.F.R. pt. 205), Bank has failed to provide any support for its claim that the State of Missouri had an obligation to seek any such determination.

Bank also relies on *Robinson v. Health Midwest Dev. Group*, 58 S.W.3d 519 (Mo. banc 2001), for the proposition that a plaintiff cannot avoid a statutory limitation period applicable to a specific statutory remedy by asserting a claim governed by a longer general statute of limitation. In *Robinson*, the plaintiff tried to bring a claim for general negligence rather than medical malpractice because the statute of limitation period for general negligence was the longer of the two. *Id.* at 522. The court determined that how the plaintiff characterized her claim was "irrelevant" because the Missouri legislature had identified a specific class of cases that would be governed by the shorter limitation period and plaintiff's claim clearly fell within that class. *Id.* at 522–23. In the instant case, the EFTA specifically provides that state law is not inconsistent if it provides the consumer "greater" protection than the EFTA. *See* Section 1693q.

Here, Congress has expressed an intent to *broaden* the relief available to consumers, not restrict it. Thus, *Robinson* is inapposite.

**B. "Relation to" Electronic Fund Transfers**

Bank next argues that Section 1693q requires that the more protective law must "relat[e] to" electronic fund transfers and Missouri's contract law does not do so. Bank also argues that Congress intended section 1693q to apply only to enacted state legislation and not to state common law.

As previously noted, we look to ascertain Congress's intent by beginning with the actual text of the provision at issue and then, if necessary, moving on to the overall structure and purpose of the Act in question. *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 655, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995). Section 1693q provides, in relevant part:

> [The EFTA] does not annul, alter, or affect the laws of any State *relating to* electronic fund transfers, except to the extent that those laws are inconsistent with the provisions of [the EFTA] and then only to the extent of the inconsistency. A State law is not inconsistent with [the EFTA] if the protection such law affords any consumer is greater than the protection afforded by [the EFTA]. The Board shall, upon its own motion or upon the request of any financial institution, State, or other interested party, submitted in accordance with procedures prescribed in regulations of the Board, determine whether a State *requirement* is inconsistent or affords greater protection.

Section 1693q (emphasis added). The report of the Committee on Banking, Housing, and Urban Affairs that drafted the EFTA provides additional guidance. It states:

> This formula is intended to eliminate minute deviations in State EFT laws and thereby foster the development of national standards, while also permitting the States to *enact legislation* affording greater consumer protection. While annulling all State EFT laws would produce the benefit of uniform EFT standards in all 50 States, the committee rejected this approach because it would contravene Congress' longstanding policy of deferring to those States which choose to provide more stringent consumer safeguards. Moreover, the committee regards this legislation as setting only minimum national standards.

S.Rep. No. 95–915, at 18 (1978) (emphasis added).

Based upon the above "enact legislation" language, Bank argues that the term "laws relating to electronic fund transfers" was thereby clearly directed to enacted state EFT legislation and not to state common law. In determining whether a law "relates to" a particular provision, the Supreme Court has explained that a law "relates to" a particular provision if it has a connection with or reference to such provision. *Travelers Ins. Co.,* 514 U.S. at 656, 115 S.Ct. 1671; *see also Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 96–97, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983) ("[a] law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan."). Here, the state common law at issue—"the bank's contractual duty to charge a depositor's account only on the depositor's authentic order," *Gaffney,* 706 S.W.2d at 534; *see Polzin,* 153 S.W.3d at 358—certainly does not "refer to" electronic fund transfers but it does have a "connection with" them in that it protects a consumer from unauthorized withdrawals,

whether they are made electronically or otherwise.

■ As to Bank's argument that Congress only intended section 1693q to apply to enacted EFT legislation and not the common law, we disagree. The broad phrases "State law" and "requirement" are used in the EFTA and make no distinction between legislative enactments and a state's common law. *See Cipollone*, 505 U.S. at 521–23, 112 S.Ct. 2608 (finding both "state law" and "requirements" to include common law as well as statutes and regulations in the federal preemption context). Further, looking to the objectives of the EFTA, we are not convinced that Congress intended to preempt state common law. As mentioned above, the primary objective of the EFTA was to protect consumer rights, and Congress explicitly stated it did not intend to preempt State law when that law afforded consumers greater protection than that provided by the EFTA. *See* 15 U.S.C. Sections 1693, 1693q; 12 C.F.R. 205.1 *et seq.*

In conclusion, Plaintiff's petition should not have been dismissed for failure to state a claim upon which relief can be granted. Plaintiff's breach of contract claim has not been preempted by the EFTA because it provides her with greater protection than any time-barred rights she would have otherwise been entitled to claim under the EFTA. The judgment of dismissal entered by the trial court is reversed and the case is remanded for further proceedings consistent with this opinion.

LYNCH, C.J., and PARRISH, J., Concur.