

# MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

KIMBERLY HARPER AND
SHARON KAY HARPER,

                  **Appellants,**

  **v.**

MISSOURI STATE HIGHWAY
PATROL, ET AL.,

                  **Respondents.**

)
)
)
)
)
)
)
)
)
)
)
)
)

**WD82465**

**OPINION FILED:**

**November 5, 2019**

**Appeal from the Circuit Court of Cole County, Missouri**
**Honorable Jon Edward Beetem, Judge**

**Before Special Division: Thomas H. Newton, Presiding Judge,**
**Alok Ahuja and Thomas N. Chapman, Judges**

## Summary

Ms. Kimberly Harper and Ms. Sharon Kay Harper (Harpers), Appellants, seek an injunction under the Missouri Sunshine Law (Sunshine Law) section 610.010[1] against the Missouri State Highway Patrol (MSHP), after it refused to disclose information relating to the shooting of now deceased Cpl. Bob Harper. The circuit court determined that the records are protected from disclosure under the Freedom of Information Act (FOIA), by way of 5 U.S.C. §§ 552(b)(7)(A) and 552(c)(1). Appellants challenge as error the circuit court's declaration and application of the federal law and not state law. We reverse.

---

[1] Statutory references are to RSMo (2016), unless otherwise indicated.

Kimberly and Sharon Kay Harper are the daughter and widow, respectively, of a former MSHP Patrolman, Cpl. Harper. MSHP is a public governmental body subject to the requirements of the Sunshine Law. Corporal Harper was shot at his home in 1994, and, both the MSHP and the Federal Bureau of Investigation (FBI) opened separate investigations into the shooting. The FBI policy in 1994 permitted attaching a copy of the FBI report to the narratives of state agencies; in 2001, however, a policy change limited the state agency to only reference the FBI report number in its own narrative. The MSHP investigators with FBI clearance to review FBI reports would write a narrative report referring to the FBI report information. In 1996, the MSHP created lead report #151, a narrative of an FBI interview, with the attached FBI report.

> Q. Okay. The next exhibit I've marked is 16. It's Lead Report 151, plus it looks like some attachments that are all redacted.
>
> A. This is one of the FBI reports I was talking about that we get the report, we refer to the report. This is how we referred to the FBI report and then the FBI report that was in this file was redacted.
>
> Q. Okay. And I'm sorry if I'm asking questions you feel like you've already answered.
>
> A. Yeah.
>
> Q. So these full redacted pages, this is a report -- this is pages that the FBI–
>
> A. This is an FBI report.
>
> Q. Okay.
>
> A. Right.
>
> Q. But is it retained by the Missouri State Highway Patrol if it's in the FBI report?
>
> A. This FBI report -- a copy of this FBI report was with this narrative.
>
> Q. Okay. And it was used by your investigative team during this investigation?
>
> A. They may have used it, correct.

Q. But it was in their possession?

A. It was in their -- the copy was in their possession.

In 2016, the MSHP created lead report #305, a narrative referencing information from a different

FBI report, without the FBI report attached.

Q. Yes. We have a copy of Lead 305.

MR. RESCHLY: But not the attachments.

MS. WILCOX: Right.

BY MS. WILCOX:
Q. But it looks like the attachments that would have been the FBI's report that it
references –

A. Right. This -- this -- this report refers to a lead that we received reference the
Harper investigation. That lead was forwarded to the FBI office in Raleigh, North
Carolina, and they followed up on it. Then they wrote a report. It is the – but it's
not included in the Harper case file, no.

Q. Okay. Did Missouri State Highway Patrol ever see or have possession of the
FBI report?

A. I have never seen or had possession of that FBI report.

Q. Okay. Unlike in the other exhibit we have where it was actually attached?

A. Correct.

Ms. Kimberly Harper submitted an online Sunshine Law request in July 2015 to MSHP's

Custodian of Records, requesting the disclosure of all records pertaining to Cpl. Harper's June

1994 arrest of Mr. Robert Joos ("Joos request").[2] In the Joos request, Ms. Kimberly Harper stated:

 I would like all reports (arrest, incident, etc.) written by my father MSHP Cpl. Bob
Harper, MSHP Sgt. Steve Dorsey, MSHP Sgt. Miles Parks, and MSHP Sgt.
Michael Rogers related to the arrest of Robert Joos on June 29, 1994, in McDonald
County, Missouri. My father and Steve Dorsey were the arresting officers, but
Parks and Rogers were there. During the arrest my father was injured and former
MSHP Superintendent Ron Replogle told me that my father should have written
and filed a report for his injuries. If there is such an injury report, I would like that

---

[2] Allegedly, Timothy Coombs shot Cpl. Harper because he arrested Mr. Joos.

3

as well, in addition to any reports and paperwork related to the arrest.

On September 14 and 28, 2015, Ms. Kimberly Harper emailed Lt. McCollum to follow up the Joos request as she had not yet received the records. On September 29, 2015, Ms. Sharon Kay Harper submitted an online Sunshine Law request to MSHP's Custodian of Records, in which she stated:

> "I would like all records, as defined by Section 610.010(6) pertaining to the shooting of husband MSHP Cpl. Bobbie J. Harper on September 16, 1994, and the subsequent investigation" ("Cpl. Harper request").

MSHP disclosed records related to the Joos request in October 2015 and informed Ms. Sharon Kay Harper that the records responsive to the Cpl. Harper request were closed and would not be disclosed. On October 28, 2015, MSHP's general counsel emailed appellants and stated, "Pursuant to Missouri Revised Statutes section 610.100, the records you requested are closed records since the investigation into this matter remains an active investigation." In response to this email, the Harpers emailed general counsel and requested that the records be produced with redactions. The MSHP did not disclose the records.

In April 2016, the Harpers filed a petition naming the MSHP and the McDonald County prosecuting attorney as defendants. The circuit court denied the MSHP's motion to dismiss the action finding that, by operation of section 610.100.1(3)(b), the passage of ten years after Cpl. Harper's shooting rendered inactive the ongoing criminal investigation and made the file a public record. In May 2016, the MSHP gave the Harpers most of the 2200 documents pursuant to the Cpl. Harper request and provided a log of records that it claims to be exempt from disclosure under section 610.100.3, and for lack of jurisdiction. Among documents logged for redaction, the MSHP redacted lead report #151 and lead report #305 ("records at issue").[3] The reason stated in the

---

[3] As indicated above, lead report #151 consists of a MSHP narrative of the attached FBI report. Lead report #305 is a MSHP narrative that references a different FBI report not retained by the MSHP.

4

privilege description for lead report #151 is as follows:

> This report was prepared by the FBI as is not within the State's jurisdiction to release. Additionally, this report was prepared by an undercover officer. Revealing the officer's name would jeopardize the safety of that officer and his or her family.

The reason stated in the privilege description for lead report #305 is as follows:

> This report was prepared by the FBI as is not within the State's jurisdiction to release.[4]

The circuit court held a bench trial and conducted an in camera review of the records at issue; the Harpers were given an opportunity to cross examine the MSHP witness regarding the basis for those redactions.[5] The circuit court dismissed the McDonald County prosecuting attorney for lack of prosecution and found in favor of the MHSP, concluding that the records at issue retained or referenced in the MSHP investigative file are closed records under section 610.021(14) and the Freedom of Information Act (FOIA), 5 U.S.C. §§ 552(b)(7)(A) and 552(c)(1). (L.F. Doc. 20). The Harpers timely appeal the circuit court's order.

## Legal Analysis

As this is a court-tried case, our review is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). "Accordingly, we will affirm the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law." *W.C.H. v. State*, 546 S.W.3d 612, 614 (Mo. App. E.D. 2018). "The trial court's application of statutory requirements is a question of law rather than fact; therefore, we review the trial court's application of statutory requirements *de novo*." *Doe v. St. Louis Cty. Police Dep't*, 505 S.W.3d 450, 453 (Mo. App. E.D. 2016) (citation omitted).

---

[4] Based on the testimony, it appears the log incorrectly referred to lead report #305 as an FBI report. It is actually an MSHP report that referenced an FBI report, which is not attached.

[5] The Court is perplexed at Respondent's claimant oral argument that the MSHP never had the records at issue in its possession. The record does not support that argument and it was not briefed so we do not consider it further.

In the sole point relied on, the Harpers claim that the circuit court erred by applying FOIA to close records retained by the MSHP because the Sunshine Law governs the status of the records at issue. According to the Harpers, "FOIA neither preempts nor is incorporated into the Sunshine Law," and the circuit court's decision to close the records at issue was erroneous and should be reversed. *Id.*

I.

The circuit court found that the records at issue are subject to FOIA and that FOIA preempts the Sunshine Law because, "Under the Supremacy Clause, state laws and constitutional provisions are 'preempted and have no effect' to the extent they conflict with federal laws." *Johnson v. State*, 366 S.W.3d 11, 26-27 (Mo. banc 2012). Federal law can preempt state law expressly, by implication through "field preemption," or when a state law conflicts with federal law. *Arizona v. United States*, 132 S. Ct 2492, 2500-01 (2012).

A state law is expressly preempted by federal law when Congress enacts a statute containing an express preemption provision. *Id.* at 2500–01. Field preemption occurs when a state regulates conduct "in a field that Congress, acting within its proper authority, has determined must be regulated by its exclusive governance." *Id.*

> "The intent to displace state law altogether can be inferred from a framework of regulation 'so pervasive ... that Congress left no room for the States to supplement it' or where there is a 'federal interest ... so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject.'" *Id.* at 2501 (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)).

"A court interpreting a federal statute pertaining to areas traditionally controlled by state law should be reluctant to find preemption." *State v. Diaz-Rey*, 397 S.W.3d 5, 8–9 (Mo. App. E.D. 2013) (citation omitted). "In preemption analysis, courts should assume that 'the historic police powers of the States' are not superseded 'unless that was the clear and manifest purpose of

6

Congress.'" *Arizona*, 132 S.Ct. at 2501 (quoting *Rice*, 331 U.S. at 230); *see Connelly v. Iolab corp.*, 927 S.W.2d 848, 851 (Mo. Banc 1996). To determine whether state law is preempted by a federal statute, we examine the text and structure of the federal statute. *State ex rel. Proctor v. Messina*, 320 S.W.3d 145, 148 (Mo. banc 2010).

FOIA, at section 552(a)(3) states: "[E]ach agency, upon request for records . . . shall make the records promptly available to any person." Since FOIA's enforcement provision, § 552(a)(4)(B), refers only to "agency records,"[6] it is clear that the disclosure obligations imposed by section 552(a)(3) were intended to apply only to federal agencies. Congress did not set forth a clear and manifest purpose to supersede state laws traditionally governing the public records of state agencies.

## II.

We must first determine whether the records at issue retained by the MSHP are "agency records" governed by FOIA. Originally, FOIA did not define the term "record." For light on its interpretation, the U.S. Supreme Court looked to the definition of "record" in the Records Disposal Act,[7] the Securities Exchange Act of 1934,[8] the Presidential Records Act of 1978, and the Administrative Procedure Act: Hearings on S. 1160 et al. before the Subcommittee on Administrative Practice and Procedure of the Senate Committee on the Judiciary, 89th Cong., 1st

---

[6] "Agency" as defined in section 551(1) of this title includes "Each authority of the government of the United States," with some exceptions. For purposes of section 552, "agency" means "any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency." 5 U.S.C.A. § 552 (f)(1).

[7] "The Attorney General's Memorandum on the Public Information Section of the Administrative Procedure Act 23–24 (1967), S.Doc.No.93–82, pp. 222–223 (1974), concludes that Congress intended this aspect of the Records Act definition to apply to the Freedom of Information Act. *Forsham v. Harris,* 445 U.S. 169, 183 (1980).

[8] "For purposes of [FOIA] the term 'records' includes all applications, statements, reports, contracts, correspondence, notices, and other documents filed with or otherwise *obtained by* the Commission pursuant to this chapter or otherwise." (Emphasis added.) 15 U.S.C. § 78x. *Id*. at 185.

Sess., 244 (1965). *Forsham v. Harris*, 445 U.S. 169, 183 (1980).

"Two requirements emerge from *Kissinger* and *Forsham*, each of which must be satisfied for requested materials to qualify as 'agency records'."[9] *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 144 (1989). "First, an agency must 'either create or obtain' the requested materials 'as a prerequisite to its becoming an "agency record" within the meaning of the FOIA.'" *Id.* (citing *Kissinger v. Reporters Comm. for Freedom of the Press,* 445 U.S. 136, 182 (1980)). In *Forsham*, the Supreme Court noted that the fact that the agency has a right of access to data and a right if it so chooses to obtain permanent custody of the records, does not provide protection under FOIA. *Forsham*, 445 U.S. at 185–86. "[T]he FOIA applies to records which have been *in fact* obtained, and not to records which merely *could have been* obtained." *Id*. at 186. "To construe the FOIA to embrace the latter class of documents would be to extend the reach of the Act beyond what we believe Congress intended." *Id*. "Second, the agency must be in control of the requested materials at the time the FOIA request is made." *Tax Analysts, 445 U.S. at 145* (citing *Kissinger*, 445 U.S. at 156).[10] The requirement that the materials be in the agency's control at the time the request is made accords with the statement in *Forsham,* that FOIA does not cover "information in the abstract." *Forsham*, 445 U.S. at 185.[11] The circuit court erroneously applied the definition of "records" from 44 U.S.C. § 3301(a)(1)(A) to determine that the records at issue are agency records for the purpose of FOIA.

---

[9] The definition for agency and record that now appears in §552(f)(2) includes (A) "any information that would be an agency record subject to the requirements of this section when maintained by an agency in any format, including an electronic format"; and (B) "any information described under subparagraph (A) that is maintained for an agency by an entity under Government contract, for the purposes of records management." 5 U.S.C.A. § 552.

[10] "By control we mean that the materials have come into the agency's possession in the legitimate conduct of its official duties." *See U.S. Sep't of justice v. Tax Analysts, 492 U.S. 136, 145 (1989).*

[11] The Eighth Circuit follows the two-prong analysis for qualification of an "agency record." *State of Missouri ex rel. Garstang v. U.S. Dep't of Interior, 297 F.3d 745, 749–50 (8th Cir. 2002).*

The FBI and MSHP opened separate investigations into the shooting of Cpl. Harper in 1994. MSHP archived its investigative file at the Secretary of State's office. The lead investigator for the MSHP testified that the MSHP retains the records at issue.

Q. So these full redacted pages, this is a report -- this is pages that the FBI –

A. This is an FBI report.

Q. Okay.

A. Right.

Q. But is it retained by the Missouri State Highway Patrol if it's in the FBI report?

A. This FBI report -- a copy of this FBI report was with this narrative.

Q. Okay. And it was used by your investigative team during this investigation?

A. They may have used it, correct.

Q. But it was in their possession?

A. It was in their -- the copy was in their possession.

As explained by the MSHP lead investigator, the MSHP writes its own narratives referring to the FBI reports and retains the information in the MSHP file.

> "[I]f the FBI did a report … whoever got the report from the FBI would write a report referring to the FBI's report. The physical FBI report is probably not in those (MSHP) files. … [W]e had a narrative. We had a Missouri State Highway Patrol report that refers to the FBI. So an FBI agent wrote a report, we would write a report on such and such day, we received a report from Special Agent so and so that states this. And then we would put that in our file. . ."

The MSHP written-narratives in lead reports #151 and #305 do not fall within FOIA's purview because those records were not created or obtained by the FBI and were certainly not in the FBI's possession at any time. *Forsham*, 445 U.S. at 185-86. In contrast, the copy of the attached FBI report in lead report #151 was created by the FBI and had come into the agency's possession in the legitimate conduct of its official duties. *Tax Analysts*, 492 U.S. at 145. Even so,

9

FOIA does not cover "information in the abstract." *Forsham*, 445 U.S. at 185. There is no dispute these records were retained by the MSHP and requested under the Sunshine Law. FOIA does not preempt the Sunshine Law and to construe FOIA to embrace state agency retained records, requested under state law, would be to extend the reach of FOIA beyond what we believe Congress intended. We find that the records at issue are not "agency records" for the purposes of FOIA.

To this extent, the circuit court erred in finding that the records at issue fall under FOIA exemptions and thus are "[r]ecords which are protected from disclosure by law. Section 610.021(14) RSMo." The misapplication of a FOIA exemption to circumvent the Missouri Sunshine Law is to disregard the basic principles of the supremacy clause and preemption doctrine. The records at issue do not fall under a FOIA disclosure exemption.[12]

### III.

The Harpers argue that the MSHP is a public governmental body[13] and retains the records at issue, and, thus, they are "public records" subject to disclosure under the state open meetings and records statute. A public record is defined as "any record, whether written or electronically stored, *retained* by or of any public governmental body."
§ 610.010 (emphasis added). Under the Sunshine Law, "meetings, records, votes, actions, and deliberations of public governmental bodies" are accessible to the public except when "otherwise

---

[12] *See Missouri Prot. & Advocacy Servs. v. Allan*, 787 S.W.2d 291, 293 (Mo. App. W.D. 1990).

> The even larger flaw in the appellants' theory relying on the FOIA as "the law" to protect disclosure under the Missouri act is the transfer of the document by the federal agency to a state agency. Like the state law, the FOIA is designed to insure "virtually every document generated by an agency is available to the public in one form or another, unless it falls within one of the ... exemptions." NLRB v. Sears Roebuck & Co., supra, at 136, 95 S.Ct. at 1509. . . In the same vein, Chapter 610 embodies Missouri's commitment to open government and is to be construed liberally in favor of open government." Missouri Prot. & Advocacy Servs. v. Allan, 787 S.W.2d 291, 295 (Mo. App. W.D. 1990).

[13] The Missouri Sunshine Law defines a public governmental body as "any legislative, administrative, or governmental entity created by the Constitution or statutes of this state." § 610.010. MSHP was created by state statute. § 43.020 the parties stipulate that MSHP is a public governmental body under the Sunshine Law.

provided by law." Mo. Ann. Stat. § 610.011. Sections 610.010 to 610.200 shall be liberally construed and their exceptions strictly construed to promote this public policy. "The ordinary meaning of the word *retain* is 'to hold or continue to hold in possession or use: continue to have, use, recognize, or accept: maintain in one's keeping....'" *Hemeyer v. KRCG-TV*, 6 S.W.3d 880, 881-82 (Mo. banc 1999) (citing *Webster's Third New International Dictionary* 1938 (1976)); *Missouri Prot. & Advocacy Servs. v. Allan*, 787 S.W.2d 291, 293 (Mo. App. W.D. 1990).

> It is a basic rule of statutory construction that words should be given their plain and ordinary meaning whenever possible. Courts look elsewhere for interpretation only when the meaning is ambiguous or would lead to an illogical result defeating the purpose of the legislature.

*Spradlin v. City of Fulton*, 982 S.W.2d 255, 258 (Mo. 1998) (citation omitted).

We reject the MSHP's argument that the records at issue are property of the FBI as a way to shoehorn the records into the category of "agency records." MSHP argues that the FBI did not intend to relinquish control over its disseminated information, but allowed the MSHP to retain, analyze, and process the records while maintaining its legal control under the *Daly* analysis. The MSHP argues that "[t]he primary rule of statutory construction is to ascertain the intent of the Legislature from the language used, to give effect to that intent if possible, and *consider* the words used in their ordinary meaning." *State ex rel. Daly v. Info. Tech. Servs. Agency of City of St. Louis*, 417 S.W.3d 804, 808 (Mo. App. E.D. 2013) (emphasis added) (citing *Anderson v. Vill' of Jacksonville*, 103 S.W. 3d 190, 195 (Mo. App. W.D. 2003)). We do not find this argument apt or persuasive. The Missouri Supreme Court's application of the plain and ordinary meaning of the word "retained" under section 610 in *Hemeyer,* 6 S.W.3d at 881, is binding on this Court. Moreover, the current cause is distinguished from *Daly* because the Sunshine request for records

at issue in *Daly* was made to "merely" a data processor for the public agency.[14]  *Daly*, 417 S.W.3d at 810.  In the present case, the MSHP did not merely receive the FBI report attached the lead report #151 for the purpose of data processing.  As indicated in dicta from *Daly*, the FBI surrendered its control of the FBI reports and the MSHP retained it:

> Governmental agencies often communicate with each other and we acknowledge that a document could be held as a record of more than one governmental agency. But in those circumstances, the agency that transmitted the record surrendered its sole custody of the record and the receiving entity *retained* it.

(emphasis added).  *Id.*

We conclude that the records at issue are retained by the MSHP and are public records subject to the Sunshine Law.

### Conclusion

We reverse the circuit court's judgment applying the Freedom of Information Act to records that are subject to the Missouri Sunshine Laws.

/s/ *Thomas H. Newton*

Thomas H. Newton, Presiding Judge

Alok Ahuja, and Thomas N. Chapman, JJ. concur.

---

[14] "We do not believe that merely receiving another agency's employee information to convert into a form that can be processed by a computer to generate a payroll for that agency constitutes 'legal control' over said data as contemplated by the General Assembly, for purposes of 'retaining' the information under the Sunshine Act."  *State ex rel. Daly v. Info. Tech. Servs. Agency of City of St. Louis*, 417 S.W.3d 804, 810 (Mo. App. E.D. 2013).