**COOPERATIVE HOME CARE, INC.,
et al., Respondents/Cross–
Appellants,**

v.

**CITY OF ST. LOUIS, Missouri, et al.,
Appellants/Cross–Respondents.**

No. SC 95401

Supreme Court of Missouri,
en banc.

Opinion issued February 28, 2017

Rehearing Denied April 25, 2017

John J. Rehmann II, James G. Martin, Robert F. Epperson Jr., Dowd Bennett LLP, Michael A. Garvin, Mark Lawson, Erin McGowan, City Counselor's Office, St. Louis, for Appellants/Cross–Respondents.

Jane E. Dueker, Thomas W. Hayde, Arthur D. Gregg, Spencer Fane LLP, James N. Foster Jr., Brian C. Hey, McMahon Berger, St. Louis, for Respondents/Cross–Appellants.

Arthur J. Clemens Jr., St. Louis, pro se.

Christopher N. Grant, Schuchat, Cook & Werner, St. Louis, for Municipal and Labor Law Scholars, the National Employment Law Project and Missouri Jobs with Justice.

Laura Denvir Stith, Judge

The parties cross-appeal a judgment invalidating St. Louis City's Ordinance 70078, which establishes a citywide local minimum wage. The trial court rejected Plaintiffs' arguments that the minimum wage ordinance governed a matter beyond purely local concerns and held that it was not preempted by section 67.1571, RSMo 2000, because the bill adopting that provision was unconstitutionally enacted. But, the trial court nonetheless invalidated Ordinance 70078 because it requires a higher minimum wage than the state requires in section 290.502, RSMo Supp. 2013. The trial court believed that section 71.010, RSMo 2000, which includes a general prohibition on local laws that conflict with state laws, would bar such supplemental local minimum wage ordinances.

This Court affirms the trial court's holding that section 67.1571 does not preempt

Ordinance 70078 because section 67.1571 was enacted in a manner that violates article III, section 23 of the Missouri Constitution in that it contained more than one subject. This Court reaffirms that the City was not barred from raising the violation of article III, section 23 as a defense even though the statute of limitations set out in section 516.500, RSMo 2000, has expired because that limitations period does not apply to raising as a defense the constitutional validity of the manner in which a bill was enacted.

This Court also holds that Missouri's minimum wage law, section 290.502, considered alone or in conjunction with section 71.010, does not occupy the field of minimum wage laws, nor does it prohibit the adoption of local minimum wage ordinances such as Ordinance 70078. Section 290.502 prohibits employers from paying employees a wage lower than the state minimum, and nothing in the statute prevents local governments from adopting locally higher minimum wages. To the contrary, the legislature has enacted legislation, including HB 722, which refers to and allows for the continued effectiveness of local minimum wage ordinances, thereby recognizing and implicitly approving the adoption of local minimum wage ordinances that supplement the state minimum wage law.[1] Whatever effect on future ordinances HB 722 may have going forward, it does not purport to preempt ordinances otherwise effective on August 28, 2015. Ordinance 70078 was in effect on August 28, 2015, because it had not been preempted by the general minimum wage law or by section 67.1571. Local laws such as Ordinance 70078 are

within a municipality's police powers, and the City did not improperly stray beyond its charter authority in enacting a minimum wage ordinance. The portion of the judgment invalidating Ordinance 70078 is reversed.

## I. STATEMENT OF FACTS AND PROCEDURAL HISTORY

On August 28, 2015, St. Louis enacted Ordinance 70078 of its revised city code. It was signed and became effective that day. The ordinance provides a series of four graduated increases to the minimum wage for employees working within the physical boundaries of St. Louis, beginning on October 15, 2015 at $8.25 per hour and ending on January 1, 2018 at $11 per hour.[2] Beginning January 1, 2021, the minimum wage rate under section 2(B)(2) of the ordinance shall be increased annually on a percentage basis to reflect the rate of inflation. The ordinance further states, "If the state or federal minimum wage rate is at any time greater than the minimum wage rate established by this ordinance, then the greater shall become the minimum wage rate for purposes of this ordinance."

On September 14, 2015, Plaintiffs filed a seven-count petition against the City, the Board of Public Services, and various named city officers in their official capacities. The petition sought a declaratory judgment that Ordinance 70078 is invalid and injunctive relief to prevent Defendants from enforcing the ordinance. The petition alleged, *inter alia*, that local minimum wage ordinances are preempted by section

---

1. See § 288.062.6(3), RSMo Supp. 2013; § 285.055.2, RSMo Supp. 2015 (referred to here as HB 722).

2. The ordinance's proposed series of graduated increases in the minimum wage rate are as follows: (1) beginning on October 15, 2015, it

increases to $8.25 per hour; (2) beginning on January 1, 2016, it increases to $9 per hour; (3) beginning on January 1, 2017, it increases to $10 per hour; and (4) beginning on January 1, 2018, it increases to $11 per hour.

290.502 (considered alone or in conjunction with section 71.010), by section 67.1571, and that Ordinance 70078 exceeds the charter authority granted to the City.

Section 290.502 contains Missouri's minimum wage law, which provides in relevant part that "every employer shall pay to each employee wages at the rate of $6.50 per hour, or wages at the same rate or rates set under the provisions of federal law." The minimum wage rate is subject to yearly adjustments by the Missouri Department of Labor and Industrial Relations, based upon any change in the cost of living. Under Missouri's minimum wage law, the state minimum wage rate is currently $7.65 per hour.

Section 67.1571 was adopted in 1998 through the enactment of HB 1636. Known as the Community Improvement District Act, HB 1636, as initially proposed, addressed solely the establishment, proper governance, and operation of community improvement districts. It did not address minimum wages or the minimum wage law in any way. Minimum wages were, instead, the subject of another bill, HB 1346, which proposed to "prohibit political subdivisions of this state from establishing or requiring a minimum wage that exceeds the state minimum wage." When HB 1346 failed to pass out of committee, comparable minimum wage language was added as a late amendment to HB 1636. *H.B. 1636, 1998 Gen. Assemb., Reg. Sess. (Mo. 1998)* ("No municipality . . . shall establish, mandate or otherwise require a minimum wage that exceeds the state minimum wage."). Once HB 1636 became law, the minimum wage provision added to the bill was codified as section 67.1571.

On October 14, 2015, the trial court entered an order finding that section 67.1671 is invalid because it violates the single subject rule set out in article III, section 23 of the Missouri Constitution. It also found that Ordinance 70078 was expressly limited to local concerns and did not extend to matters of statewide or nationwide concern. The trial court nonetheless invalidated the ordinance as beyond the City's authority because it found that it was preempted by sections 290.502 and 71.010 because the trial court believed that section 71.010 prohibited the adoption of local ordinances supplementing any state law on a subject, including minimum wage ordinances.

Aware of uncertainties caused by litigation concerning section 67.1571, the General Assembly adopted another minimum wage bill, HB 722, on May 6, 2015. HB 722, now codified at section 285.055, RSMo Supp. 2015, provided:

> No political subdivision shall establish, mandate, or otherwise require an employer to provide an employee: (1) [a] minimum wage or living wage rate; or (2) [e]mployment benefits; that exceed the requirements of federal or state laws, rules or regulations. The provisions of this subsection shall not preempt any state or local minimum wage ordinance requirements in effect on August 28, 2015.

Governor Nixon vetoed HB 722 on July 10, 2015, but on September 16, 2015, the General Assembly overrode his veto. HB 722 went into effect no later than October 16, 2015, which is 30 days after the veto was overridden.[3] On October 26, 2015, De-

---

**3.** Plaintiffs argue that HB 722 went into effect after the veto override pursuant to section 21.250, RSMo 2000 (providing that the bill goes into effect "thirty days after approval by constitutional majorities in both houses of the

General Assembly"). Defendants do not take a position as to when HB 722 went into effect, correctly noting that it does not matter. Their argument is not that HB 722 authorizes Ordinance 70078 but rather that, because prior

fendants filed a motion to amend or modify judgment because they believed their power to enact the ordinance was specifically acknowledged by certain "grandfathering" language contained in newly enacted HB 722, but the trial court overruled this motion on November 12, 2015. This appeal followed.

## II. STANDARD OF REVIEW

This Court has exclusive appellate jurisdiction to review the constitutional validity of a statute. *Mo. Const. art. V, sec. 3.* Determining the validity of a statute is a question of law that an appellate court reviews *de novo*. *Peters v. Johns, 489 S.W.3d 262, 266 (Mo. banc 2016).* "A statute is presumed valid and will not be held unconstitutional unless it clearly contravenes a constitutional provision." *Rentschler v. Nixon, 311 S.W.3d 783, 786 (Mo. banc 2010).* The party challenging the validity of the statute carries the burden of proving the act "clearly and undoubtedly" violates the constitution. *Id.*

Likewise, ordinances are presumed to be valid and lawful. *McCollum v. Dir. of Revenue, 906 S.W.2d 368, 369 (Mo. banc 1995).* The party challenging the validity of the ordinance carries the burden of proving the municipality exceeded its constitutional or statutory authority. *Parking Sys., Inc. v. Kansas City Downtown Redev. Corp., 518 S.W.2d 11, 16 (Mo. 1974).* "The words contained in the statute or ordinance should be given their plain and ordinary meaning and should be interpreted to avoid absurd results." *McCollum, 906 S.W.2d at 369.*

## III. ST. LOUIS CITY'S LOCAL MINIMUM WAGE ORDINANCE IS NOT PREEMPTED AND IS NOT BEYOND THE CITY'S CHARTER AUTHORITY

### A. General Concepts Governing Preemption

A constitutional charter city, such as St. Louis City, derives its charter powers from article VI, section 19(a) of the Missouri Constitution, which states in part:

> Any city which adopts or has adopted a charter for its own government, shall have all powers which the general assembly of the state of Missouri has authority to confer upon any city, provided such powers are consistent with the constitution of this state and are not limited or denied either by the charter so adopted or by statute.

Pursuant to this constitutional provision, if a charter city's power to adopt an ordinance is challenged, the Court will uphold the ordinance upon finding: (1) the ordinance is not preempted by statute, and (2) the locality acted within the constitutional parameters of the authority delegated to it in its charter.[4] Here, Plaintiffs claim that state statutes preempt the ordinance and that the City acted beyond its charter authority.

A charter city is not required to exercise delegated powers in "precisely the same manner as prescribed by the general

law does not preempt Ordinance 70078, HB 722, whenever it became effective, does not preempt the ordinance.

4. The principles of preemption arise from article VI, section 19(a), granting charter cities power to enact laws "provided such powers are not limited or denied ... by statute." *See also St. Louis v. W. Union Tel. Co., 149 U.S.* 465, 468, 13 S.Ct. 990, 37 L.Ed. 810 (1893) ("St. Louis ... does not ... derive its powers by grant from the legislature, but it framed its own charter under express authority from the people of the state, given in the constitution."); *Page W., Inc. v. Cnty. Fire Prot. Dist. of St. Louis Cnty. 636 S.W.2d 65, 67 (Mo. banc 1982).*

law of the state," but local legislation cannot create an inconsistent or irreconcilable conflict with state law. *Missouri Bankers Ass'n, Inc. v. St. Louis Cnty.*, 448 S.W.3d 267, 272 (Mo. banc 2014). If this Court finds such a conflict exists, state statutes preempt the local ordinances. *Id.*

Preemption of a local law by a statute may be express or implied. Express preemption occurs when the General Assembly has explicitly proscribed local regulation in a specific area. *Stegall v. Peoples Bank of Cuba*, 270 S.W.3d 500, 503 (Mo. App. 2008) (stating, in addressing federal express preemption, "Express preemption occurs when the exemption is expressly stated within the statute itself.").[5]

Implied preemption can occur in either of two ways—through "conflict" preemption or through "field" preemption. Conflict preemption occurs when a local ordinance conflicts with a specific state statute either because it "prohibits what the statute permits" or because it "permits what the statute prohibits." *Cape Motor Lodge, Inc. v. City of Cape Girardeau*, 706 S.W.2d 208, 211 (Mo. banc 1986). In such cases, the conflict is resolved by giving effect to the state statute rather than the conflicting local law. *City of St. Peters v. Roeder*, 466 S.W.3d 538, 543 (Mo. banc 2015). Yet, while a local ordinance may not directly conflict with the state law, it can supplement the state law by creating additional requirements. *State ex rel. Hewlett v. Womach*, 355 Mo. 486, 196 S.W.2d 809,

815 (1946); *see also Page Western, Inc. v. Cmty. Fire Prot. Dist. of St. Louis Cnty.*, 636 S.W.2d 65, 68 (Mo. banc 1982) ("augmentation by ordinances which further regulate the matter covered by state law is permissible"). By contrast, field preemption occurs when the General Assembly has created a state regulatory scheme that is so comprehensive that it reasonably can be inferred that the General Assembly intended to occupy the legislative field, leaving no room for local supplementation. *See Connelly v. Iolab Corp.*, 927 S.W.2d 848, 851 (Mo. banc 1996) (addressing federal field preemption).[6]

### B. Section 67.1571 Does Not Preempt the St. Louis Ordinance

Plaintiffs argue that Ordinance 70078 is expressly preempted by section 67.1571, which provides that "[n]o municipality ... shall establish, mandate or otherwise require a minimum wage that exceeds the state minimum wage."[7] Defendants do not contest that, if valid, section 67.1571 would expressly preempt Ordinance 70078. Rather, they argue section 67.1571 can preempt nothing because it was enacted as an amendment to an unrelated bill, violating the single subject rule set out in article III, section 23 of the Missouri Constitution.

Article III, section 23 states that "[n]o bill shall contain more than one subject which shall be clearly expressed in its title." "The test for whether a bill violates the single subject rule is whether the

---

5. *See also St. Charles Cnty. Ambulance Dist. v. Town of Dardenne Prairie, 39 S.W.3d 67, 68–69 (Mo. App. 2001), citing Page W., Inc. 636 S.W.2d at 66 (addressing state express preemption).*

6. *See also Union Elec. Co. v. City of Crestwood, 499 S.W.2d 480, 482 (Mo. 1973); Borron v. Farrenkopf, 5 S.W.3d 618, 624 (Mo. App. 1999) (addressing whether the entire field or "area was occupied by statute").*

7. Though Plaintiffs refer to the issue as "conflict preemption," the more appropriate term is "express preemption" when used in this context: when the state has expressly prohibited local governments from legislating on a particular subject, the matter is expressly preempted. *See Stegall, 270 S.W.3d at 503.*

bill's provisions fairly · relate to, have a natural connection with, or are a means to accomplish the subject of the bill as expressed in its title." *Mo. Roundtable for Life, Inc. v. State*, 396 S.W.3d 348, 351 (Mo. banc 2013) (internal quotation and citation omitted). The "subject" of the bill includes "all matters that fall within or reasonably relate to the general core purpose of the proposed legislation." *Hammerschmidt v. Boone Cnty.* 877 S.W.2d 98, 102 (Mo. banc 1994). To determine this original purpose, the Court first focuses on the title of the bill rather than the relationship among its individual provisions. *Id.*

The title of HB 1636 was "An Act to repeal [certain specified code · sections] relating to community improvement districts, and to enact in lieu thereof new sections relating to the same subject." *H.B. 1636, 1998 Gen. Assemb., Reg. Sess. (Mo. 1998).* Both the title and the bill's provisions stated that the bill's original purpose related to the establishment, proper governance, and operation of community improvement districts. *Id.*

The provision now enacted as section 67.1571 is titled "Minimum Wage Limitation" and prohibits local municipalities from setting a minimum wage standard higher than that set by the state. This provision is not connected to, related to, or germane to the original purpose of HB 1636; it was attached as an amendment to the HB 1636 only after HB 1346 failed to pass out of committee.

This late addition to the HB 1636 provides a clear example of the legislative logrolling that article III, section 23 is intended to prevent. It contains more than one subject because its minimum wage provision does not fairly relate to its original purpose.[8] *See Stroh Brewery Co. v. State,* 954 S.W.2d 323, 325 (Mo. banc 1997)

(section 23 serves to "facilitate orderly procedure, avoid surprise, and prevent 'logrolling,' in which several matters that would not individually command a majority vote are rounded up into a single bill to ensure passage"); *Mo. Ass'n of Club Execs., Inc. v. State,* 208 S.W.3d 885, 888 (Mo. banc 2006) (holding the late inclusion of provisions regulating adult entertainment to a bill regulating traffic offenses violated the bar on changing the original purpose of bill and was an example of legislative logrolling).

▇▇▇▇ "When the Court concludes that a bill contains more than one subject, the entire bill is unconstitutional unless the Court is convinced beyond a reasonable doubt that one of the bill's multiple subjects is its original, controlling purpose and the other subject is not." *Hammerschmidt, 877 S.W.2d at 103.* This Court may then "sever the portion of the bill containing the additional subject(s) and permit the bill to stand with its primary, core subject intact." *Id.* To determine whether the one purpose is original and controlling, this Court must consider "whether the additional subject is essential to the efficacy of the bill, whether it is a provision without which the bill would be incomplete and unworkable, and whether the provision is one without which the legislators would not have adopted the bill." *Id. at 103.* (internal quotations and citations omitted).

▇▇▇ This Court finds that the core, original purpose of HB 1636 relates to the establishment, proper governance, and operation of community improvement districts. The provisions that support this controlling purpose are independent of the minimum wage amendment—indeed, that is why the section is invalid. There is no

---

**8.** *See also Mo. Const. art. III, sec. 21* ("[N]o bill shall be so amended in its passage through either house as to change its original purpose.").

basis to presume the legislature would not have passed the bill without the minimum wage provision. Section 67.1571, therefore, may be severed from the unchallenged portions of the bill.

 Plaintiffs do not deny the portion of HB 1636 enacting what is now section 67.1571 violated the single subject rule. Rather, they seek to use collateral estoppel offensively against the City to preclude it from raising the statute's invalidity as a defense, arguing the city already litigated the validity of section 67.1571 in *Missouri Hotel & Motel Ass'n, v. City of St. Louis, Case No. 22004–02638 (Mo Cir. Ct. 2001).*[9]

 A court will give collateral estoppel effect to a prior adjudication only after it determines the following four factors are satisfied:

(1) whether the issue decided in the prior adjudication was identical to the issue presented in the present action; (2) whether the prior adjudication resulted in a judgment on the merits; (3) whether the party against whom estoppel is asserted was a party or was in privity with a party to the prior adjudication; and (4) whether the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit.

*James v. Paul, 49 S.W.3d 678, 682 (Mo. banc 2001)* (citations omitted). Offensive

collateral estoppel is disfavored by courts, and it will not be applied when doing so would be inequitable in light of these four factors. *Id. 682–85.* Here, it would not be fair to apply collateral estoppel against the City because the second and fourth factors are not met.

In *Missouri Hotel,* the trial court held that a minimum wage ordinance the City adopted in August 2000 was expressly preempted by section 67.1571 but that section 67.1571 violated the single subject and clear title provisions of the Missouri Constitution. *Order and Judgment, Case No. 22004–02638 (Mo Cir. Ct. July 18, 2001).*[10] The parties appealed, but the City then enacted a new ordinance in place of the one at issue in the case, making the issue moot. This Court held, "As no adverse party filed an appeal in this case the appeal is dismissed." *Order Dismissing Appeal, Missouri Hotel & Motel Ass'n, v. City of St. Louis, Case. No. SC84107 (Mo. Sept. 10, 2002).* In other words, this Court did not decide *Missouri Hotel* on the merits and, therefore, the second factor set out in *James, 49 S.W.3d at 682–85,* was not satisfied. Similarly, as there was no opportunity for review on appeal, and thus no full and fair opportunity to litigate the issue, the fourth factor set out in *James* also was not satisfied. *See also Envtl. Prot. Info. Ctr., Inc. v. Pac. Lumber Co., 257 F.3d 1071, 1076 (9th Cir. 2001)* ("As collat-

**9.** There are two types of collateral estoppel, offensive and defensive. Offensive collateral estoppel occurs when a plaintiff uses the prior adjudication of an issue to prevent the defendant from challenging a fact necessary to the plaintiff's case. In contrast, defensive collateral estoppel is generally invoked by the defendant to prevent a plaintiff from relitigating a fact that was already decided in prior litigation and is necessary for the plaintiff to prove his or her case. *James v. Paul, 49 S.W.3d 678, 685 (Mo. banc 2001).* Here, Plaintiffs seek to use collateral estoppel offensively based on the *Missouri Hotel* litigation.

**10.** There are two types of collateral estoppel, offensive and defensive. Offensive collateral estoppel occurs when a plaintiff uses the prior adjudication of an issue to prevent the defendant from challenging a fact necessary to the plaintiff's case. In contrast, defensive collateral estoppel is generally invoked by the defendant to prevent a plaintiff from relitigating a fact that was already decided in prior litigation and is necessary for the plaintiff to prove his or her case. *James v. Paul, 49 S.W.3d 678, 685 (Mo. banc 2001).* Here, Plaintiffs seek to use collateral estoppel offensively based on the *Missouri Hotel* litigation.

eral estoppel does not apply to an unap-pealable determination, simply holding a ruling unappealable eliminates any prospect of preclusion."). And, even were it fair to apply collateral estoppel based on a trial court ruling not subjected to appellate review, the trial court judgment in *Missouri Hotel* found that section 67.1571 was invalid because it violated the single subject rule. The decision, therefore, favored the City on this issue. Certainly it has no collateral estoppel effect *against* the City on the issue of the validity of section 67.1571.

■■ Plaintiffs also claim that the statute of limitations set out in section 516.500 bars the City from challenging the validity of section 67.1571. Section 516.500 states, "In no event shall an action alleging a procedural defect in the enactment of a bill into law be allowed later than five years after the bill or the pertinent section of the bill which is challenged becomes effective."

■■ As Plaintiffs acknowledge, this Court has repeatedly recognized that the time-bar set out in section 516.500 simply limits the time for bringing an action alleging a procedural defect in a bill's enactment. It does not purport to set out any time limit precluding a party from raising a bill's procedural defects as a defense to a claim. "Under Missouri law, even though a claim may be barred by the applicable statute of limitations, the essence of the claim may be raised as a defense." *Boone Nat'l Sav. & Loan Ass'n, F.A. v. Crouch, 47 S.W.3d 371, 375 (Mo. banc 2001).*[11]

For this reason, when similarly presented with an argument that the statutory time period had expired for raising a procedural objection to how a bill was passed, this Court has twice noted that section 516.500 applies only to actions, not to defenses. *See, e.g., Schaefer v. Koster, 342 S.W.3d 299, 300, n.1 (Mo. banc 2011)* ("Section 516.500, which places a limit upon when an 'action' can be 'commenced, had or maintained' to challenge procedural irregularities in the enactment of a law, does not apply to a criminal defendant who raises a challenge to the statute as a defense in the criminal case."); *Lebeau v. Comm'rs of Franklin Cnty., Missouri, 422 S.W.3d 284, 291, n.6 (Mo. banc 2014)* (quoting *Schaefer, 342 S.W.3d at 300 n. 1,* the Court found, "Had LeBeau and Reichert waited to assert their claims as a defense to a municipal violation, they would not have been time barred from doing so under this Court's recent precedent.").

Likewise, here, the City is not barred from arguing that section 67.0571 is invalid and so does not preempt local ordinances concerning minimum wages.

## C. The Ordinance Does Not Conflict with Missouri's Minimum Wage Law

**11.** Plaintiffs also suggest that, while the City is using the invalidity of section 67.1571 as a defense, it is not using it as an affirmative defense because it does not contest liability, just the application of a statute. Whether called affirmative or not, the City is using the invalidity of the way in which HB 1636 was enacted as a bar to prevent Plaintiffs from arguing that Ordinance 70078 is preempted by section 67.1571, and nothing in the section prevents it from so doing. In any event, this Court has held that an affirmative defense is "asserted by the *pleading of additional facts* not necessary to support a plaintiff's case which serve to avoid the defendants' legal responsibility even though plaintiffs' allegations are sustained by the evidence." *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp., 854 S.W.2d 371, 383 (Mo. banc 1993)* (internal quotations and citations omitted) (emphasis added in *ITT Commercial*). Here, the City affirmatively raises the unconstitutionality of the method of enactment of what is now section 67.1571 as a defense to plaintiffs' claim that the City's 2015 local wage ordinance was invalid. It is an affirmative defense.

Plaintiffs argue that, even if Ordinance 70078 is not specifically preempted by section 67.1571, the entire field of minimum wage regulation is preempted by Missouri's minimum wage law. That law, Plaintiffs say, sets a "standard for authorized conduct," permitting employers to pay employees any wage at or above the statutory minimum. Plaintiffs interpret this to constitute a specific authorization for employers to pay to an employee any wage at or above the statutory minimum, and an ordinance providing for a higher minimum wage "prohibits what the state permits" in that it prohibits employers from paying a wage lower than the local minimum wage standard but higher than the state standard. Plaintiffs argue that Ordinance 70078, therefore, directly conflicts with Missouri's minimum wage law and that the field of minimum wage laws is preempted.

Plaintiffs are incorrect. Their arguments are an amalgam of conflict and field preemption principles and result in a muddied analysis that discusses elements of each interchangeably. This Court addresses these distinct types of preemption separately.

Conflict preemption applies only when a local law prohibits what state law permits or when the local law permits what state law prohibits. For example, in *Page Western, Inc., 636 S.W.2d at 67–68*, this Court held that an ordinance specifically prohibiting self-service gas pumps directly conflicted with a state regulation expressly permitting self-service gas pumps. The local ordinance prohibited what the state permitted and so was preempted. *Id.*

By contrast, there is no conflict preemption when a local law simply supplements state law, such as when the locality prohibits more than the state prohibits. That is why this Court found no conflict preemption in *Kansas City v. LaRose, 524 S.W.2d 112, 117 (Mo. banc 1975)*, which involved a municipal ordinance dispensing with a mens rea element that was required by state statute, effectively criminalizing more conduct than the state. It was not preempted because it simply prohibited more than did the state statute.

*Kansas City v. Carlson, 292 S.W.3d 368, 372 (Mo. App. 2009)*, applied this same principle. It found no preemption of a municipal ban on smoking in "all enclosed places of employment within the city" and in "all enclosed public places within the city" even though this ban went further than a similar state law that banned smoking only in "public places," while listing several types of areas "not considered a public place." *Id. Carlson* held that if the state law were a statute of authorization that "affirmatively permit[ted] smoking in bars and billiard parlors meeting its condition, then the municipal ordinance's prohibition would be in conflict with the state law. However, if the ordinance merely enlarges the state law, the two are not in conflict." *Id.*

Similarly, Plaintiffs are incorrect that the Missouri minimum wage law is an affirmative authorization to pay no more than the state minimum wage. To the contrary, it simply sets a floor below which an employee cannot be paid, stating that "every employer shall pay to each employee wages at the rate of [the current state minimum wage standard]." *§ 290.502*. To conclude that the law was intended to protect *employers* from ever being required to pay a higher wage is at odds with the statute's recognized purpose, which is to ameliorate the " 'unequal bargaining power as between employer and employee' and to 'protect the rights of those who toil.' " *Tolentino v. Starwood Hotels & Resorts Worldwide Inc., 437 S.W.3d 754, 761 (Mo. banc 2014), quoting Specht v. City of Sioux Falls, 639 F.3d 814, 819 (8th Cir. 2011)*. Its purpose of protecting employees is served by setting a floor for minimum wages; nothing in the law suggests the state also

wanted to protect employers by setting a maximum minimum wage. Indeed, that is why section 67.1571 had to be passed in the first instance, because there was no such prohibitory law.

As Ordinance 70078 does not permit the payment of less than the state minimum wage, it is not in conflict with that law. It simply supplements the state law by setting additional local limits on the minimum amount an employer can pay an employee. Its purpose is consistent with that of the state minimum wage law; by its terms, it was enacted "to promote the general welfare, health, and prosperity of the City of St. Louis by ensuring that workers can better support and care for their families and fully participate in the community." Here, the state established a floor for employee wages, and St. Louis simply raised that floor for local employees based on local conditions. Finding no reason to diverge from well-established precedent, this Court holds Ordinance 70078 does not conflict with Missouri's minimum wage law.

### D. Ordinance 70078 is Not Preempted as the State Had Not Occupied the Field so as to Preempt All Local Minimum Wage Legislation

While on their face the provisions of the minimum wage law alone do not indicate an intent to preempt all local minimum wage laws, Plaintiffs argue that such preemption becomes evident if Missouri's minimum wage law is read together with section 71.010. Together, they say, these two laws make Missouri's minimum wage law occupy the minimum wage field, preempting any local minimum wage law without regard to the effect of HB 722. Again, this Court disagrees.

### 1. Section 71.010 Does Not Preempt Local Minimum Wage Legislation

Section 71.010 sets out the general and well-recognized principle that munici-

pal ordinances that regulate "matters and things upon which there is a general law of the state ... shall ... [be] in conformity with the state law upon the same subject." This is a general statute ensuring that state and local laws do not conflict. For the reasons just noted, Ordinance 70078 does not conflict with Missouri's minimum wage law. Adding section 71.010 to the analysis, therefore, does not change the result of the preemption analysis.

Plaintiffs seek to add a gloss to section 71.010 by reading it to provide that no locality can adopt ordinances concerning an issue as to which the state has adopted a statute. This is not what section 71.010 says, and it is inconsistent with the long-established rule that local laws may supplement state law so long as they do not conflict with state law. Indeed, local ordinances often enlarge state provisions without creating a conflict between the two. The smoking bans in *Carlson* and the criminal elements in *LaRose* provide perfect examples, as do state and local laws regulating traffic, *City of St. John v. Brockus, 434 S.W.3d 90 (Mo. App. 2014)*; zoning, *State ex rel. Teefey & Agri–Lawn, Inc. v. Bd. of Zoning Adjustment of Kansas City, 24 S.W.3d 681, 685 (Mo. banc 2000)*; barber licensing, *Vest v. Kansas City, 355 Mo. 1, 194 S.W.2d 38, 39 (1946)*; engineer licensing, *Bd. of Stationary Eng'rs v. City of St. Louis, 212 S.W.2d 454, 459–60 (Mo. App. 1948)*; hunting and trapping, *Miller v. City of Town & Country, 62 S.W.3d 431, 438–39 (Mo. App. 2001)*; and selling alcohol, *Nickols v. N. Kansas City, 358 Mo. 402, 214 S.W.2d 710, 712–13 (1948)*. The state has legislated in all of these areas, yet that has never been interpreted to mean that, pursuant to section 71.010, it would conflict with those laws to allow cities and counties to add supplemental regulation.

This conclusion that local minimum wage ordinances may supplement Missouri's minimum wage law because the latter is not intended to preempt the field, is confirmed by the fact that the legislature repeatedly has recognized and authorized local ordinances and additional state laws addressing minimum wages. For instance, section 288.062.6 of Missouri's employment security law specifically acknowledges that local authorities may set a higher minimum wage than that set by the state and requires that this local minimum wage be given effect when considering what employment an injured worker must accept to not violate the worker's compensation laws, stating:

> Extended benefits shall not be denied under subsection 5 of this section to any individual for any week by reason of a failure to accept an offer of or apply for suitable work if: ... (3) If the remuneration for the work offered is less than the minimum wage provided by Section 6(a)(1) of the Fair Labor Standards Act of 1938, as amended, without regard to any exemption *or any applicable state or local minimum wage, whichever is the greater.*

*§ 288.062.6* (emphasis added). This statutory language recognizes that local minimum wages exist and supplement the state minimum wage law.

### 2. Ordinance 70078 was in Effect when HB 722 Became Effective

██ HB 722 provides another excellent example of the legislature's recognition of the validity of local minimum wage ordinances. The General Assembly passed both section 67.1571 and HB 722 after it had already passed Missouri's minimum wage law and section 71.010. Plaintiffs say that the legislature may have passed section 67.1571 because it knew localities were improperly passing local minimum wage ordinances and wanted to reinforce that they were not permitted to do so. Nothing in section 67.1571 supports this reading, but even if it were the case, HB 722 cannot be dismissed in this way. Like the employment security law just discussed, HB 722 not only acknowledges that municipalities have adopted minimum wage ordinances, but it also specifically excludes them from the statute's express preemption, stating, "The provisions of this subsection shall not preempt any state or local minimum wage ordinance requirements in effect on August 28, 2015."

As is evident, HB 722 again demonstrates that the legislature was well aware that local minimum wage ordinances supplement the state minimum wage law and that they would not be preempted if in effect before August 28, 2015, the date set out in HB 722. One such law was St. Louis City's Ordinance 65597, which was enacted in lieu of the ordinance that was the subject of litigation in *Missouri Hotel.* Adopted in 2002, Ordinance 65597 requires employers to pay a minimum wage to employees that are performing work pursuant to a contract between the employer and the City at a "Living Wage rate" that is higher than the wage set by the state minimum wage law. Although its adoption was mentioned in *Missouri Hotel,* the General Assembly has made no attempt to invalidate the ordinance or otherwise contest the City's authority to enact it. Instead, HB 722 by its terms provides that such existing ordinances are not preempted, which it would not have done had the legislature intended Missouri's minimum wage law and section 71.010 together to occupy the field and preempt all local laws on this subject.

Plaintiffs argue that HB 722 does not apply to Ordinance 70078 because HB 722 did not become effective until October 16, 2015, thirty days after the General Assem-

bly overrode the governor's veto. But, Defendants are clear that they do not rely on HB 722 as authorization for Ordinance 70078. Rather, they argue that while HB 722 is a statute of prohibition and preemption, it excepts from that preemption any local laws in effect on August 28, 2015. Therefore, what matters is not when HB 722 went into effect (an issue not argued to the Court in this case) but whether Ordinance 70078 was effective on August 28, 2015. If so, then whenever HB 722 went into effect is irrelevant, for it does not purport to preempt ordinances in effect on that date. Because, as both parties stipulate, the ordinance was adopted on August 28, 2015, its requirements were effective on that date, allowing it to fall under the exception to HB 722, so long as the City had the authority to enact the ordinance. The only real question, then, is whether Ordinance 70078 was already preempted by the general minimum wage statute or by section 67.1571. For the reasons already noted, it was not, and HB 722 does not purport to affect the validity and effectiveness of such existing ordinances. Therefore, the trial court erred in finding Ordinance 70078 was preempted and not valid and in full force and effect beginning on its effective date of August 28, 2015.[12]

### E. The City Acted Within the Scope of Its Home–Rule Authority

In a variation on its argument that the Missouri minimum wage law was intended to occupy the field of minimum wage legislation, Plaintiffs argue that what constitutes an appropriate minimum wage

is a matter of general state interest and is not within the power of localities to regulate, even when those localities are charter cities.

As noted above, article VI, section 19(a) of the Missouri Constitution provides that "[a]ny city which adopts or has adopted a charter for its own government, shall have all powers which the general assembly of the state of Missouri has authority to confer upon any city, provided such powers are consistent with the constitution of this state and are not limited or denied either by the charter so adopted or by statute." The grant of legislative powers to a charter city under this section is limited to those powers incident to the city's affairs and may not "invade the province of the general legislation involving the public policy of the state as a whole." *See Yellow Freight Sys., Inc. v. Mayor's Comm'n on Human Rights, 791 S.W.2d 382, 386 (Mo. banc 1990)*; *Missouri Banker's Ass'n, Inc., 448 S.W.3d at 271.*

Plaintiffs do not deny that standards concerning worker wages are linked to the general welfare of the citizens of St. Louis. Instead, they argue that because concern for citizens' welfare extends beyond St. Louis, the state alone has the authority to address it. This argument ignores the fact that the police power is among those powers incident to a city's affairs, so that charter cities have authority to enact ordinances having a substantial and rational relation to the "peace, comfort, safety, health, morality, and general

---

**12.** The concurring opinion suggests that because HB 722 says that its preemption provision does not apply to existing local laws, such as Ordinance 70078, this Court's preemption discussion in the prior sections of this opinion is dicta. To the contrary, HB 722 is not an affirmative authorization of otherwise preempted laws; all parties agree on this point. Rather, HB 722 merely says it does not

preempt any ordinances in effect on August 28, 2015. This Court is required to determine whether Ordinance 70078 was valid on that date, or whether it already was preempted by section 67.1571 or by the general minimum wage law. Those are the issues determined above and are not dicta but rather are necessary to this opinion.

welfare" of its inhabitants. *Missouri Dental Bd. v. Alexander*, 628 S.W.2d 646, 650 (Mo. banc 1982) (citations omitted). That is the basis on which Missouri courts have upheld local legislation addressing issues such as discrimination, smoking, and similar issues even though those issues also are addressed by state and national laws.

For example, in *Marshall v. Kansas City*, 355 S.W.2d 877, 882 (Mo. banc 1962), this Court held that Kansas City had not acted beyond its police power by enacting an ordinance designed to prevent racial discrimination in certain businesses, even though the underlying problem of discrimination also is prevalent at the state and national level. "Kansas City has the general power to define, prohibit and regulate acts, practices and conduct of businesses which are detrimental to the health, comfort, safety, convenience and welfare of its inhabitants." *Id.* Additionally, in *Carlson*, this Court found that an ordinance that prohibited smoking in local bars and billiards was a valid exercise of the city's home-rule authority and properly supplemented the state statute that regulated indoor smoking. *Carlson*, 292 S.W.3d at 374, n.7, 375; *see also* other cases discussed *supra* section C.[13] Indeed, as discussed above at length, state laws such as HB 722 and the employment security law recognize the authority of municipalities to enact ordinances which address the minimum wage. Local laws such as Ordinance 70078 may address such issues without improperly straying into the province of general legislation regulating statewide concerns. A municipality acting within powers incident to it as a municipality does not prevent the state from passing its own statewide policies on the same subject, and the existence of state laws and local ordinances on that subject is not inherently in conflict. The local ordinance may, as here, supplement state laws. The City did not act outside its home-rule authority in enacting Ordinance 70078.

### F. Other Arguments

▆ Plaintiffs also allege the Ordinance 70078 constitutes an unauthorized delegation of the City's legislative authority in that it vests the Director of the Department of Human Resources of the City with the authority to "promulgate rules and regulations regarding the interpretation, application, and enforcement of [the] Ordinance." To support their argument, Plaintiffs cite *Ex parte Williams*, 345 Mo. 1121, 139 S.W.2d 485, 491 (1940), which held, "A legislative body cannot delegate its authority, but alone must exercise its legislative functions." (internal quotation omitted).

This Court has repeatedly recognized three exceptions to the general rule prohibiting the delegation of legislative functions. For instance, in *ABC Sec. Serv., Inc.*

---

**13.** While other cities throughout this state and nation are affected by the issues addressed by minimum wage polices, the nature of the issues and their solutions similarly vary according to distinct local conditions and values. This is why localities in other states have also passed ordinances setting a local minimum wage standard. *See, e.g., Albuquerque, N.M., Code § 13–12; Berkeley, Cal., Code § 13.99; Bernalillo Cnty., N.M., Code § 2–218; Chi. Ill., Code § 1–24; Emeryville, Cal., Code § 5–37; Johnson Cnty., Iowa, Code § 4–7; L.A., Cal., § 187; L.A. Cnty., Cal., Code § 8.100; Las Cruces, N.M., Code § 14.60–* *14.68; Montgomery Cnty., Md., Code § 27–68; Mountain View, Cal., Code § 42.14; Oakland, Cal., Code § 5.92.020; Palo Alto, Cal., § 4.62; Portland, Me., Code § 33.7; Prince George's Cnty., Me., Code § 13A–117; Richmond, Cal., Code § 7.108; San Diego, Cal., Code § 39.0107; S.F., Cal., Admin. Code § 12R.4(b); San Jose, Cal., Code § 4.100; Santa Clara, Cal., Code § 3.20; Santa Fe City, N.M., Code § 28–1.12; Santa Fe Cnty., N.M., Ordinance 2014–1; Santa Monica, Cal., § 4.62; SeaTac, Wash., Code § 7.45; Seattle, Wash., Code § 14.19.030; Sunnyvale, Cal., Code § 3.80.040; and Tacoma, Wash., Code § 18.20.*

*v. Miller, 514 S.W.2d 521, 524–25 · (Mo. 1974)*, this Court stated:

> The courts recognize three general exceptions to the strict rule which requires the inclusion of standards in an ordinance or statute when a delegation is made to an administrative body: (1) where the ordinance or statute deals with situations which require the vesting of some discretion in public officials, and where it is difficult or impracticable to lay down a definite, comprehensive rule; (2) where the discretion relates to the administration of a police regulation and is necessary to protect the public morals, health, safety and general welfare; (3) where personal fitness is a factor to be taken into consideration.

The delegation at issue here fits within these exceptions. This Court has found that the City enacted the ordinance pursuant to its police powers, which extend to all things which bear a substantial relation to the "peace, comfort, safety, health, morality, and general welfare" of its people. *Alexander, 628 S.W.2d at 650* (citations omitted). The ordinance delegates power to the director to administer its rules and protect the public welfare by enacting more detailed rules to implement the ordinance's application to particular fact situations "which require the vesting of some discretion in public officials, and where it is difficult or impracticable to lay down a definite, comprehensive rule." As this Court has noted, after enacting legislation, there is often a need for these types of rules to guide application of a law to situations which "could not have been anticipated at the time of the legislative enactment." *Menorah Med. Ctr. v. Health & Educ. Facilities Auth., 584 S.W.2d 73, 83–84 (Mo. banc 1979)*. The ordinance does provide definitions for its terms such as "employee" and "wage," but such definitions are unavoidably generalized and cannot anticipate every factual question that will arise. This exception gives the director the discretion necessary to implement the ordinance through promulgated rules.[14]

Finally, Plaintiffs argue that the ordinance improperly creates a civil liability between citizens by enlarging contractual duties between the employee and employer. The Court does not agree. The cited provision, entitled "Penalty for Violations," does not purport to give the individual the right to bring a cause of action for noncompliance, but rather sets out legal requirements for payments and requires employers to comply with them. If the employer fails to comply, the ordinance allows for the court to provide penalties, including fines and jail time, subject to conditions which will serve to compensate the victim, such as restitution and back pay. Prior cases have recognized a city's authority to penalize companies for failure to comply with its ordinances. *See, e.g., Marshall, 355 S.W.2d at 881; City of St. Louis v. Brune Mgmt. Co., 391 S.W.2d 943, 946 (Mo. App. 1965)*. This Court reaffirms this law.

## IV. CONCLUSION

For the reasons stated above, the Plaintiffs' claims challenging the validity of the ordinance are without merit. The trial

---

**14.** Plaintiffs also argue that because the Board of Aldermen reserves the power to review and approve of the Director's rule-making, the ordinance improperly permits a legislative veto. To support their argument, Plaintiffs solely rely on authority that disapproves of the legislative veto between the state legislative and executive branches of government. They cite no authority to indicate this principle also applies at the local level. In the absence of such authority, this Court declines to address their argument. *See Thummel v. King, 570 S.W.2d 679, 687 (Mo. banc 1978)* (finding that appellate courts need not search for precedent to support a party's argument that is not found in the brief).

court erred in finding that sections 71.010 and 290.502 preempted Ordinance 70078 and that section 71.010 denies the City authority to enforce that ordinance. The judgment is affirmed in part and reversed in part.

Breckenridge, C.J., Draper, Wilson and Russell, JJ., concur; Fischer, J., concurs in result in separate opinion filed.

Zel M. Fischer, Judge, concurring.

I concur with the result reached in the principal opinion but write separately because no preemption analysis with respect to § 67.1571, RSMo, or the general minimum wage law is necessary in this case. House Bill No. 722, now codified as § 285.055, RSMo Noncum. Supp. 2015, provides that local minimum wage ordinances that were in effect on August 28, 2015, shall not be preempted. As the principal opinion holds, this includes Ordinance 70078. As the principal opinion also holds, the city acted within its home-rule authority in enacting Ordinance 70078. This should end the inquiry—the ordinance is authorized and not preempted.

"[A] chronologically later statute, which functions in a particular way will prevail over an earlier statute of a more general nature, and the latter statute will be regarded as an exception to or qualification of the earlier general statute." *South Metro. Fire Prot. Dist. v. City of Lee's Summit*, 278 S.W.3d 659, 666 (Mo. banc 2009) (internal quotations omitted). Additionally, "[i]t is a well-settled principle of statutory interpretation ... that [w]here there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one, regardless of the priority of enactment." *Dieser v. St. Anthony's Med. Ctr.*, 498 S.W.3d 419, 431 n.5 (Mo. banc

2016) (internal quotations omitted). If other statutes preempting minimum wage ordinances in general could preempt the ordinances § 285.055 specifically says are not preempted, that part of § 285.055 would be a nullity. This cannot be the case. Even if other statutes generally preempt local minimum wage ordinances that exceed the state minimum wage, such preemption would not control in this case because § 285.055 specifically provides that certain local minimum wage ordinances, including Ordinance 70078, are not preempted.[1] As this case concerns only Ordinance 70078 specifically, whether other statutes validly preempt local minimum wage ordinances in general is irrelevant.

For purposes of § 285.055, this Court is not, as the principal opinion asserts, "required to determine whether Ordinance 70078 was valid on [August 28, 2015], or whether it already was preempted by section 67.1571 or by the general minimum wage law." With regards to the ordinances that are not preempted, § 285.055 refers only to ordinances **"in effect on August 28, 2015."** (emphasis added). By the statute's plain language, this Court need only determine whether Ordinance 70078 was **"in effect"** on that date. Ordinance 70078 was enacted and became effective on August 28, 2015. It had not been ruled preempted or otherwise invalid. It was, therefore, "in effect on August 28, 2015," which is all that § 285.055 requires for it not to be preempted. Accordingly, I do not join in the principal opinion's alternative preemption analysis, which is not necessary to the resolution of this case and is, therefore, dicta. *See Rentschler v. Nixon*, 311 S.W.3d 783, 787 n.2 (Mo. banc 2010).

---

1. Section 285.055 also prohibits any new local minimum wage ordinances that would

"exceed the requirements of federal or state laws, rules, or regulations."