

# SUPREME COURT OF MISSOURI
## en banc

CHRISTOPHER ZANG, ) *Opinion issued January 31, 2023*
          )
     Appellant, )
          )
v.          ) No. SC99419
          )
CITY OF ST. CHARLES, MISSOURI, )
          )
     Respondent. )

## APPEAL FROM THE CIRCUIT COURT OF ST. CHARLES COUNTY
### The Honorable Daniel G. Pelikan, Judge

Christopher Zang appeals from the circuit court's judgment sustaining the City of St. Charles' motion to dismiss due to Zang's failure to provide notice of suit as required by section 12.3 of the City of St. Charles Charter (the "Charter"). Zang claims the Charter's notice requirement must be stricken because it conflicts with various statutes. Finding no irreconcilable conflict between Charter section 12.3 and the statutes cited by Zang, this Court affirms the circuit court's judgment.

## Factual and Procedural Background

In June 2019, Zang fell off his bike and injured himself while crossing an open-grated metal bridge in St. Charles, Missouri. Approximately nine months later, Zang filed suit against the City of St. Charles (the "City") and St. Charles County (the "County")

alleging negligence in Count I and premises liability in Count II. Zang claimed the property was owned and/or controlled by the City or the County.[1] Zang did not provide written notice to the City within 90 days of his accident or at any point prior to filing suit.

The City responded by filing a motion to dismiss in which it argued Zang's premises liability claim was barred because he failed to give proper notice as required by section 12.3 of the Charter.[2] That section provides:

NOTICE OF SUITS.

> No action shall be maintained against the city for or on account of an injury growing out of alleged negligence of the city unless notice shall first have been given in writing to the mayor within ninety days of the occurrence for which said damage is claimed, stating the place, time, character and circumstances of the injury, and that the person so injured will claim damages therefor from the city.

Zang countered that the Charter's notice requirement was unconstitutional because it irreconcilably conflicts with section 516.120[3] and the Missouri Constitution.

The circuit court sustained the City's motion and dismissed Zang's premises liability claim. The court found the Charter provision mirrored four similar statutes[4] that require notice and, therefore, "is not inconsistent or in conflict with state law."

---

[1] Zang voluntarily dismissed the County without prejudice in January 2021. Accordingly, this appeal involves only the City.

[2] The City moved to dismiss Count I because Zang failed to state a recognized waiver to sovereign immunity. With the consent of the parties, the City's motion to dismiss Count I was converted to a motion for summary judgment. Subsequently, the circuit court entered summary judgment on Count I, and it is not the focus of this appeal.

[3] All statutory references are to RSMo 2016, unless otherwise specified.

[4] *See* secs. 77.600, 79.480, 81.060, 82.210.

This appeal follows.[5]

## Standard of Review

Whether section 12.3 of the Charter contravenes the Missouri Constitution or state statutes is a question of law meriting *de novo* review. *See Poke v. Indep. Sch. Dist.*, 647 S.W.3d 18, 20 (Mo. banc 2022) (explaining questions of statutory interpretation and the existence of sovereign immunity are questions of law subject to *de novo* review); *see also City of Kan. City v. Carlson*, 292 S.W.3d 368, 370 (Mo. App. 2009) ("Whether a city exceeds its statutory authority in passing an ordinance is an issue we review *de novo*."). "[O]rdinances are presumed to be valid and lawful. The party challenging the validity of the ordinance carries the burden of proving the municipality exceeded its constitutional or statutory authority." *Coop. Home Care, Inc. v. City of St. Louis*, 514 S.W.3d 571, 578 (Mo. banc 2017) (internal citations omitted).

## Analysis

Zang claims the circuit court erred in sustaining the City's motion to dismiss because section 12.3 of the Charter conflicts with sections 537.600.1, 82.210, and 516.120. Accordingly, Zang argues the Charter's notice requirement must be invalidated. In the absence of a notice requirement, Zang contends he complied with section 516.120's five-year statute of limitations, the only other time restraint imposed upon him.

---

[5] After an opinion by the court of appeals, this Court granted transfer. Mo. Const. art. V, sec. 10.

3

## I. Background surrounding constitutional charter cities

The City is a constitutional charter city with a population of fewer than 100,000 inhabitants. Having adopted the Charter in 1981, the City derives its charter powers from article VI, section 19(a) of the Missouri Constitution, which states:

> Any city which adopts or has adopted a charter for its own government, shall have all powers which the general assembly of the state of Missouri has authority to confer upon any city, provided such powers are consistent with the constitution of this state and are not limited or denied either by the charter so adopted or by statute. Such a city shall, in addition to its home rule powers, have all powers conferred by law.

Article VI, section 19(a) was adopted in 1971. Prior to section 19(a)'s adoption, the grant of powers to charter cities came from article VI, section 19 of the Missouri Constitution (1945), which provided in pertinent part, "Any city having more than 10,000 inhabitants may frame and adopt a charter for its own government, consistent with and subject to the Constitution and laws of the state[.]"

This Court acknowledged the impact of section 19(a)'s adoption in *State ex inf. Hannah ex rel. Christ v. City of St. Charles*, explaining, "prior to the adoption of § 19(a), the powers which a home rule municipality could exercise through the constitutional grant of a right to adopt a charter, were limited to those powers which the people of the city expressly delegated to the city under the charter and those powers given by statute." 676 S.W.2d 508, 512 (Mo. banc 1984). Now, "[u]nder Missouri's new model of home rule [laid out in section 19(a)], even in the absence of an express delegation by the people of a home rule municipality in their charter, the municipality possesses all powers which are not limited or denied by the constitution, by statute, or by the charter itself." *Id.*

4

In other words, "[u]nder section 19(a), the emphasis no longer is whether a home rule city has the authority to exercise the power involved; the emphasis is whether the exercise of that power **conflicts with the Missouri Constitution, state statutes** or the charter itself." *Cape Motor Lodge, Inc. v. City of Cape Girardeau*, 706 S.W.2d 208, 211 (Mo. banc 1986) (emphasis added).[6]

## II.     The Charter's notice requirement does not conflict with statutory law

Zang alleges various conflicts exist between Charter section 12.3 and sections 82.210, 516.120, and 537.600.1. Whether a state law provision conflicts with a charter provision is a matter of statutory construction. *Id.* "As a general principle, where a charter provision and statutes do not irreconcilably conflict, both stand." *Gates v. City of Springfield*, 744 S.W.2d 487, 488 (Mo. App. 1988). If there is an irreconcilable conflict between a statute and a charter provision, however, the charter provision is preempted. *Coop. Home Care*, 514 S.W.3d at 578-79.

Preemption may be either express or implied. *Id.* at 579. Express preemption occurs when the legislature "explicitly proscribed local regulation in a specific area." *Id.* On the other hand, "[i]mplied preemption can occur in either of two ways—through 'conflict' preemption or through 'field' preemption." *Id.* Conflict preemption occurs when "the [local law] 'permits what the statute prohibits' or 'prohibits what the statute permits.'" *Cape Motor Lodge*, 706 S.W.2d at 211 (quoting *Page W., Inc. v. Cmty. Fire Prot. Dist. of*

---

[6] For example, this Court explained section 19(a) did not give Kansas City the power "to provide in its charter for its operation of public schools within its corporate limits" because that power was denied by state statute. *Enright v. Kan. City*, 536 S.W.2d 17, 19 (Mo. banc 1976).

5

*St. Louis Cnty.*, 636 S.W.2d 65, 67 (Mo. banc 1982)). Notably, there is no conflict if the local law merely enlarges or supplements the state law, "such as when the locality prohibits more than the state prohibits." *Coop. Home Care*, 514 S.W.3d at 583. Additionally, "field preemption occurs when the General Assembly has created a state regulatory scheme that is so comprehensive that it reasonably can be inferred that the General Assembly intended to occupy the legislative field, leaving no room for local supplementation." *Id.* at 579.

### A. Sections 82.210 and 537.600.1(2)

Zang argues Charter section 12.3 conflicts with sections 82.210 and 537.600.1(2). According to Zang, Charter section 12.3 must be preempted because it: (1) permits what the statute prohibits and (2) occurs in an area in which the General Assembly intended to occupy the legislative field. Neither of Zang's claims is persuasive.

Section 537.600.1(2) waives sovereign immunity for injuries caused by the condition of a public entity's property, specifically:

> Injuries caused by the condition of a public entity's property if the plaintiff establishes that the property was in dangerous condition at the time of the injury, that the injury directly resulted from the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of harm of the kind of injury which was incurred, and that either a negligent or wrongful act or omission of an employee of the public entity within the course of his employment created the dangerous condition or a public entity had actual or constructive notice of the dangerous condition in sufficient time prior to the injury to have taken measures to protect against the dangerous condition.

6

For constitutional charter cities with a population of at least 100,000 inhabitants, however, section 537.600.1(2)'s waiver of sovereign immunity is limited by section 82.210's notice requirement.[7] Section 82.210 provides:

> No action shall be maintained against any city of this state which now has or may hereafter attain a ***population of one hundred thousand inhabitants***, on account of any injuries growing out of any defect in the condition of any bridge, boulevard, street, sidewalk or thoroughfare in said city, until notice shall first have been given in writing to the mayor of said city, ***within ninety days of the occurrence for which such damage is claimed***, stating the place where, the time when such injury was received, and the character and circumstances of the injury, and that the person so injured will claim damages therefor from such city.

(Emphasis added).

To the extent Zang is arguing section 82.210 prohibits constitutional charter cities with populations of fewer than 100,000 inhabitants from creating notice requirements, this argument holds no merit. As Zang concedes at other points in his brief, section 82.210 does not apply to constitutional charter cities with a population of fewer than 100,000 inhabitants. *See Waisblum v. City of St. Joseph*, 928 S.W.2d 414, 417 (Mo. App. 1996) ("Since the City of St. Joseph has fewer than 100,000 inhabitants, § 82.210 does not apply to it and Mr. Waisblum was not required to give the City notice of the occurrence he alleged caused him injury."). The language of section 82.210 and its population requirement is clear and unambiguous. *Id.* Consequently, because section 82.210 is entirely inapplicable

---

[7] Similar notice requirements exist for the three other classes of cities in Missouri. *See* secs. 77.600 (applicable to third-class cities), 79.480 (applicable to fourth-class cities), 81.060 (applicable to special charter cities with a population of 500 to 3,000 inhabitants).

to the City, it neither creates a statutory notice requirement for the City nor prohibits it from enacting its own notice requirement.

Moreover, this Court has repeatedly cautioned against the use of the maxim *expressio unius est exclusio* (omissions shall be understood as exclusions) except when the legislature's intent is self-evident within the statute. *See, e.g.*, *State ex rel. Hawley v. Pilot Travel Ctrs., LLC*, 558 S.W.3d 22, 31 (Mo. banc 2018) ("In other words, it must be clear from the statute that the legislature intended for the Board to not possess the power of entering into subrogation contracts with Fund participants." (emphasis omitted)); *Six Flags Theme Parks, Inc. v. Dir. of Revenue*, 179 S.W.3d 266, 269-70 (Mo. banc 2005); *Reorganized Sch. Dist. No. R-8 of Lafayette Cnty. v. Robertson*, 262 S.W.2d 847, 850 (Mo. 1953). This Court dealt with a similar challenge in *Cape Motor Lodge,* 706 S.W.2d 208. There, the plaintiffs sought to invalidate an ordinance authorizing Cape Girardeau to enter into an agreement with Southeast Missouri State University because the Missouri Constitution and state law permitted municipalities to enter into such agreements with certain specified entities, which the university was not. *Id.* at 211. This Court disagreed with the plaintiffs, holding the Missouri Constitution and the referenced statute "do not operate as both authorization and limitation. These provisions contain no indication that the express enumerations of the entities named are to be considered as the exclusion of others not named." *Id.* at 212 (internal quotation marks omitted). Similarly, there is no indication section 82.210's applicability to certain constitutional charter cities is to the exclusion of those that do not satisfy its population requirement.

Additionally, while Charter section 12.3 limits section 537.600.1(2)'s waiver of sovereign immunity, the Charter's notice requirement does not prohibit what section 537.600.1(2) permits.  *See Findley v. City of Kan.  City*, 782 S.W.2d 393, 397 (Mo. banc 1990).   Notice requirements have been held constitutional even when they limit a municipality's waiver of sovereign immunity.  *Id.* ("If the legislature can bar recovery entirely by the adoption of sovereign immunity, intending to close the floodgates to tort claims as in *Winston,* it follows that the legislature can choose for itself whether to open those floodgates widely or, as in this case, but a crack."); *see also Winston v. Reorganized Sch. Dist. R-2, Lawrence Cnty., Miller*, 636 S.W.2d 324, 328 (Mo. banc 1982) (explaining "a sovereign may prescribe the terms and conditions under which it may be sued").

Likewise, sections 82.210 and 537.600.1(2) do not evince a legislative intent to occupy the field and prevent constitutional charter cities with populations of less than 100,000 inhabitants from creating notice requirements.  "State law occupies an area when it has created a comprehensive scheme on a particular area of the law, leaving no room for local control."   *Borron v. Farrenkopf*, 5 S.W.3d 618, 624 (Mo. App. 1999).  While Zang emphasizes the four notice statutes cover the majority of cities in Missouri, he fails to explain how that creates a reasonable inference that the legislature intended to occupy the field and leave no room for local supplementation.  Had the legislature intended to occupy the field by limiting notice requirements to only the cities qualifying under the notice statutes, it could have said so.  *Cape Motor Lodge*, 706 S.W.2d at 212.

9

### B. Section 516.120

Zang next claims Charter section 12.3 irreconcilably conflicts with section 516.120 because both create time restrictions for when an action may be brought. Section 516.120(2) imposes a five-year statute of limitations for "[a]n action upon a liability created by a statute other than a penalty or forfeiture."

In *Findley*, this Court held section 82.210's 90-day notice requirement was constitutional even though it had the same practical effect as a statute of limitations, because notice requirements are rooted in sovereign immunity. 782 S.W.2d at 395.[8] "It being constitutionally permissible for the legislature to cloak municipalities with immunity by statute, it necessarily follows that any waiver of immunity granted is subject to the limits imposed in the waiver." *Id.* at 396. Consequently, because statutory notice requirements are permissible, the remaining question is whether constitutional charter cities can also create such requirements.

Pursuant to article VI, section 19(a)'s grant of authority to constitutional charter cities, the City possesses the power to impose a notice requirement because notice requirements are not limited or denied by section 516.120. *See also Cape Motor Lodge*, 706 S.W.2d at 212 (finding no conflict between an ordinance and statute because the

---

[8] As *Findley* explained, numerous reasons exist to justify a notice requirement such as: (1) limiting a city's exposure to liability claims; (2) allowing a city to investigate and defend against a claim; (3) protecting against stale claims by allowing prompt investigation of witnesses and the scene before time alters conditions or obscures the memory; and (4) allowing the city to address dangerous conditions promptly to avoid additional risk to citizens and visitors. 782 S.W.2d at 397. These justifications apply equally to constitutional charter cities with populations of more than and fewer than 100,000 inhabitants.

"language of these provisions is not expressly inconsistent, nor in irreconcilable conflict"). In fact, as evinced by the legislature's enactment of section 82.210 and the other notice statutes (which Charter section 12.3 mirrors), notice requirements can and do coexist with statutes of limitations. *Findley*, 782 S.W.2d at 396. Nothing in section 516.120's five-year statute of limitations restricts or denies the City from creating its own notice requirement. There is no express inconsistency or irreconcilable conflict between Charter section 12.3 and section 516.120. As this Court explained in *Findley*, notice requirements have a different origin than statutes of limitations and serve a different purpose. *Id.* at 395. As such, Charter section 12.3 and section 516.120 function independently and for different reasons. The fact that a claimant can satisfy the City's notice requirement and then still fail to satisfy section 516.120's statute of limitations highlights this distinction.

Additionally, Zang's reliance on *Heater v. Burt*, 769 S.W.2d 127 (Mo. banc 1989), is misplaced because that case considered a charter provision's notice requirement under the prior constitutional grant of power to charter cities, not under article VI, section 19(a). *Id.* at 128-29. In *Heater*, this Court found that a notice requirement was inconsistent with the statute of limitations because "[t]he effect on the injured parties is the same whether their claim is denied by the statute of limitations or a notice-of-claim provision." *Id.* at 130. Under the prior constitutional grant of power to charter cities, any inconsistency between the "laws of the state" and a charter provision would result in the charter provision's invalidation. *Id.* at 129. *Heater*'s analysis turned on the "charter provision plac[ing] a condition precedent for bringing an action of negligence which was not present ***at common law*** and not consistent with the statute of limitations." *Id.* (emphasis added).

11

Of course, the new constitutional provision is different, allowing the exercise of "all powers which the general assembly of the state of Missouri has authority to confer upon any city, provided such powers are ***consistent with the constitution of this state*** and are ***not limited or denied either by the charter so adopted or by statute***." Mo. Const. art. VI, sec. 19(a) (emphasis added). In other words, Charter section 12.3 would exceed the City's charter powers only if it is limited or denied by statute, which is not the case here.

Accordingly, although impermissible under the old constitutional regime, notice requirements are permissible under article VI, section 19(a) because they do not irreconcilably conflict with the statute of limitations in section 516.120, they are simply more restrictive. This Court has explained on numerous occasions that local laws may be more restrictive than statewide laws, so long as a "municipality does not attempt to authorize by the ordinance what the legislature has forbidden or forbid what the legislature has expressly licensed, authorized, or required[.]" *Kan. City v. LaRose*, 524 S.W.2d 112, 117 (Mo. banc 1975); *see also Coop. Home Care*, 514 S.W.3d at 583 (quoting *Carlson*, 292 S.W.3d at 372). The notice requirement may restrict who is eligible to bring suit against the City, but it does not change what type of suits can be brought against the City or how long a claimant has under section 516.120's five-year statute of limitations.

## C. Section 537.600.1(1)

Finally, Zang claims Charter section 12.3 conflicts with section 537.600.1(1)[9] because the Charter's notice requirement applies to all actions involving "negligence of the city," while state law contains only a notice requirement for premises liability claims. Accordingly, Zang argues Charter section 12.3 impermissibly requires notice for actions involving the negligent acts or omissions of public employees.

For the same reasons it is permissible for the City to enact its own notice requirements applicable to section 537.600.1(2), it can also do so for section 537.600.1(1). Section 537.600.1(1) neither permits what Charter section 12.3 prohibits nor contains any indication of a legislative intent to occupy the field. *See Cape Motor Lodge*, 706 S.W.2d at 212; *Findley*, 782 S.W.2d at 397.

### Conclusion

For the reasons set forth above, the circuit court's judgment is affirmed.

_____

Robin Ransom, Judge

Wilson, C.J., Russell, Powell, Breckenridge and
Draper, JJ., concur;Fischer, J., concurs in result.

---

[9] Section 537.600.1(1) waives sovereign immunity for "[i]njuries directly resulting from the negligent acts or omissions by public employees arising out of the operation of motor vehicles or motorized vehicles within the course of their employment[.]"